No. 1107.

STATE OF LOUISIANA VS. ELIJAH HORNSBY.

In criminal cases, the jury cannot leave a sealed verdict with the clerk during the adjournment of the court and thereupon be permitted to separate. The verdict rendered under such circumstances, will be set aside. The provisions of the Code of Practice relative to jury trials have no application to criminal cases.

APPEAL from the Twenty-first Judicial District Court, parish of Iberia. *Fontelieu*, J.

F. Perodin, District Attorney, for the State, Appellee.

Gates & Foster for Defendant and Appellant.

The opinion of the Court was delivered by

FENNER, J. Defendant was indicted for murder, found guilty without capital punishment, and sentenced to imprisonment for life at hard labor in the State penitentiary.

The record informs us, from the minutes of the court, that the case was given to the jury, and the jury retired to their room at about 11 o'clock P. M., on Saturday, September 28th ; that after waiting until about 1½ o'clock Sunday morning, there being no prospect of agreement, the court was ordered adjourned until Monday, the 29th, at 10 o'clock A. M. ; that on Sunday morning at six o'clock, the jury handed to the clerk of the court a sealed verdict ; that thereupon the jury separated and dispersed ; that on Monday morning, on the opening of the court, the jury reassembled in the court room and were duly polled ; that the clerk then handed to the judge the sealed verdict which he had received from the jury, on the back of which was written the following certificate signed by all the members of the jury, viz :

"NEW IBERIA, September 28, 1879.

We certify that this envelope contains the true bill and verdict in the case of the State of Louisiana vs. E. Hornsby ;" that the jury was asked if this was their verdict, and each and everyone answered in the affirmative ; that the verdict was then ordered to be read and was read, as follows : "Guilty without capital punishment.

(Signed)                      J. A. FAGOT, Foreman."

Upon the grounds that the proceedings of the jury, as above detailed, were irregular and unlawful, and vitiated the verdict, defendant moved for a new trial. and afterwards in arrest of judgment, both of which were overruled.

It is thoroughly settled, in this State, that, in capital cases, the jury cannot be permitted to separate, at any time during the trial, even with the consent of the prisoner. 8 Rob. 554 ; 4 An. 434 ; 5 An. 398 ; 11 An. 283 ; 12 An. 710 ; 21 An. 321 ; 23 An. 213.

The trial is not closed until the delivery and reading of the verdict in open court and the discharge of the jury.

The provisions of the Code of Practice relative to jury trials have no application to criminal cases. Even in civil cases, however, it does not appear that the jury may deliver a sealed verdict during the adjournment of the court, without special antecedent authority to that effect from the judge. C. P. 529.

What constitutes a separation invalidating a verdict may be a question for judicial determination ; but there can be no doubt on that point in a case like this, where the jury has actually dispersed.

The presumption of abuse and misconduct from such separation are conclusive and are not required to be supported by evidence. 21 A. 321 ; 8 Rob. 54.

It is not difficult to conceive how separation, as in this case, even after agreement on a verdict, might operate to the disadvantage of the prisoner. The agreement might have been reached through anxiety of jurors to go to their homes. If they had been kept together, it does not certainly follow that they would have agreed. Although they might have agreed at 6 o'clock on Sunday morning, any juror might have withdrawn his assent at any time before the rendition of the verdict. *Non constat*, that such change might not have taken place, had the jury remained together and in consultation until Monday morning, as the law required.

We are of opinion that the verdict is vitiated and that the sentence cannot be sustained.

This is sufficient to dispose of the case ; but, for the guidance of the lower court in future proceedings in the case, we will briefly notice some other points presented by the bills of exception.

1st. The objection of the accused to the question to Veazey "state whether or not Hornsby resisted arrest," was well taken ; resistance to arrest being a distinct offense not charged in the indictment.

2d. The exception by accused to the testimony of C. C. Delahoussaye, we think was not well taken.

3d. The exception by accused to the statement of Dejoux that a proposition had been made to him to bribe him not to testify, by the brother of accused and by Captain Green, was well taken—the proposition not being shown to have been made in presence of accused or by his authority.

4th. The exception of accused to the charge of the judge directing the jury to give no weight or consideration to the written testimony of Dejoux on the preliminary examination, after the same had been received in evidence, and under the circumstances stated in the bill of exceptions, was well taken and the charge was erroneous.

5th. Exceptions are presented to the refusal of the judge to give the following charges, viz :

(1) " That it was incumbent on the State to prove the deceased died of a wound, that the wound was inflicted by the deceased at the time charged, and that the presumption of death resulting from said wound must be so strong as to preclude all reasonable presumption of a death from any other cause."

The judge gave the first part of the charge but refused the part as to the presumption. We see no· error, because the first part substantially includes the last.

(2) " That if the position of the parties, deceased and Hornsby, at the time of the alleged shooting, as shown by the testimony of Dejoux, was such as to preclude the possibility of Hornsby's inflicting the wound described by the attending physician at the *post mortem* examination, then such fact must be taken, in so far as it goes, as impeaching the testimony of Dejoux."

We think the charge, as asked, is too broad. It substantially directs that the fact " must be taken as impeaching the testimony of Dejoux." Whether it should be so taken as having such effect was for the jury to decide.

(3) " That if the jury find, from the evidence given by Dejoux on the preliminary examination and the testimony given by him on the trial of this case, that the said Dejoux contradicts himself upon salient and prominent facts connected with the alleged affidavit and the alleged shooting, then they (the jury) are the proper judges of whether or not these contradictions impeached the testimony of Dejoux ; and if the said Dejoux does on this trial contradict his evidence taken on the preliminary examination, then it will be for the jury to determine whether or not the testimony of Dejoux has been impeached."

This charge was properly asked. The jury are the judges of the effect of evidence ; and the refusal to give the charge was error.

6th. We are at a loss here to pass upon the exception taken by the District Attorney to the admission of Dejoux's deposition, taken on the preliminary examination, on the ground, among others, that is was not signed by him, with the further statement in the bill, that though the name of Dejoux is appended to the bill, the signature is not proved ; because in other bills signed by the judge, the statement does appear distinctly that the deposition *was* signed by Dejoux.

The other exceptions of the District Attorney presented in the record, seem to us not well taken.

We think it unnecessary to say what effect the various errors here stated might have had on the proceeding, since we base our decree on the sufficient ground first stated by us.

It is, therefore, ordered, adjudged and decreed that the verdict of the jury be set aside, and the judgment rendered thereon be annulled and reversed, and that this case be remanded to the lower court for a new trial of the prisoner, and to be proceeded with according to law, and that the prisoner be held in custody to await the same.