(115 So. 728)

No. 28787.

## STATE v. ROBICHAUX et al.

Jan. 18, 1928. Rehearing Denied Feb. 13, 1928.

*(Syllabus by Editorial Staff.)*

**1. Embezzlement ⬤1—Amendatory act relative to embezzlement held not to amend or repeal act relative to embezzlement from banks (Rev. St. § 907; Act No. 165 of 1918, amending Rev. St. § 905).**

Act No. 165 of 1918, amending Rev. St. § 905, relating to embezzlement, does not amend or repeal Rev. St. § 907, relative to embezzlement from banks.

**2. Indictment and information ⬤125(2)—Cognate offenses may be charged conjunctively in same count.**

It is proper and necessary that cognate offenses be charged conjunctively in one and the same count of the indictment.

**3. Embezzlement ⬤30—In prosecution for embezzlement of money in bank, statement of ownership of money or date of deposit held immaterial (Rev. St. § 907).**

In prosecution under Rev. St. § 907, for embezzlement of money "belonging to such bank, or deposited therein," *held* that statement as to whom money belonged or date of deposit was immaterial and not required, since the statute makes embezzlement of funds deposited in a bank a crime regardless of ownership.

**4. Criminal law ⬤427(1)—Evidence tending to show conspiracy between jointly indicted defendants is admissible, although indictment does not expressly charge conspiracy.**

Evidence by way of confession of one defendant tending to show a conspiracy between defendants charged with embezzlement of moneys from bank, defendants being jointly indicted, *held* admissible, although indictment did not expressly, in formal terms, charge conspiracy.

**5. Criminal law ⬤423(2)—Conspirator's declarations are admissible against coconspirators, whether made in or out of their presence, if made during execution of common enterprise.**

Declarations made by a conspirator during execution of the common enterprise are admissible against his coconspirators, whether made in or out of their presence, but not if made

after the common design has been consummated or abandoned.

**6. Criminal law ⬤673(4)—Confession by codefendant, made after commission of embezzlement, held properly restricted to defendant by whom made.**

In prosecution of two persons jointly indicted for embezzlement of money from a bank, confession by one of defendants, made after commission of the embezzlement, *held* properly admitted as evidence against defendant making it, where properly restricted so as not to be used against the other.

**7. Witnesses ⬤379(4)—Evidence of one of two defendants, jointly indicted for embezzlement from bank, showing that other defendant had made sworn statement in bank's reports, before arrest, as to regularity of accounts, held admissible as affecting credibility of witness making report, where he testified otherwise at trial.**

In prosecution of two persons, jointly indicted for embezzlement of moneys from a bank, wherein one defendant was attempting to show by his testimony that the defalcation and irregularities were the fault of the other, admitting in evidence a report furnished to the state bank commissioner and signed by the defendant, who was attempting to blame the other for the irregularities, stating, under oath, that bank was in good condition a short time before arrest of the two defendants, *held* proper for the purpose of affecting credibility of witness who had made such report but was testifying otherwise.

**8. Criminal law ⬤1036(1)—That exhibition of reports to jury depicting joint defendant as perjurer was ground for reversal could not be availed of on appeal, where not objected to on trial.**

Claim of defendant jointly indicted for embezzlement of money from a bank, that the counsel for the other defendant improperly exhibited a certain bank report to the jury and depicted the other defendant as a perjurer, could not be availed of on appeal as being prejudicial and ground for reversal, where no request was made at the time that jury be charged in reference thereto, and no other request for appropriate action and ruling was made.

**9. Criminal law ⬤770(2)—Charge must cover every phase of case supported by evidence, whether or not accepted as true by judge.**

Charge must cover every phase of the case supported by evidence, whether accepted as true or not by the trial judge.

10. **Criminal law** ⬪792(1)—**In trial of jointly indicted defendants for embezzlement from bank, failure to instruct, as requested, as to meaning of accessory after the fact, held reversible error, there being evidence that one defendant was accessory.**

In prosecution of two jointly indicted defendants for embezzlement of moneys from a bank, wherein there was evidence to support one defendant's contention that he was not a principal as charged but was an accessory after the fact, court's failure to instruct relative to meaning of accessory after the fact and as to law applicable thereto, although he was requested to so instruct, *held* reversible error.

11. **Criminal law** ⬪922(2)—**Refusing new trial held reversible error, where court had refused to instruct as to law on accessory after fact, though there was evidence to show one defendant was such.**

Overruling of motion for new trial *held* reversible error, where, in prosecution for embezzlement from a bank, one defendant claimed he was not a principal but was accessory after the fact, and there was evidence to support his contention.

12. **Criminal law** ⬪422(9)—**Agreement of one jointly indicted defendant to submit case without argument did not preclude evidence of other relative to his being accessory only.**

Where two defendants were jointly indicted for embezzlement of moneys from a bank, and after the one had agreed to submit his case on the testimony of the state without argument there was an adjournment for a day and upon reconvening the other took the stand in his own behalf, urging as his sole defense that he was an accessory after the fact and not a principal, objection of the other defendant to such evidence and proceedings *held* frivolous and not ground for reversal, as the codefendant had the right to make and to support his defense by his own testimony however much it may have affected the other.

13. **Criminal law** ⬪1169(7)—**Admitting evidence of confession of embezzlement not within year held not prejudicial as to defendant not involved in confession, where strictly confined to other defendant.**

Admitting evidence to prove confession of embezzlement from a bank committed in 1918, notwithstanding offense was prescribed by one-year statute, *held* not prejudicial error as to defendant not involved in confession, where there was other evidence of act of embezzlement committed within a year, and also the jury was instructed to ignore such evidence relative to the 1918 embezzlement as regarded the defendant not making confession.

14. **Criminal law** ⬪1090(16)—**Refusal to grant new trial for error in not severing defendants' trials held not available on appeal, where bill not reserved.**

Refusal to grant new trial to one of two defendants, jointly indicted for embezzlement of moneys from bank, because of alleged error in not severing the trials, *held* not available on appeal, where the minutes of the trial showed that the motion was argued and overruled and no bill was reserved.

15. **Criminal law** ⬪1044—**Refusal of new trial on ground of public prejudice held not available on appeal, where no motion for change of venue was made.**

Refusal to grant a new trial to one of two defendants jointly indicted and tried for embezzlement of moneys from a bank, new trial being sought because of public prejudice, *held* not available on review, where no motion for change of venue was made.

16. **Criminal law** ⬪854(2)—**Separation of jury in noncapital case rests within court's discretion.**

Separation of jury before verdict in a noncapital case is a matter resting within discretion of trial judge.

17. **Criminal law** ⬪854(7)—**Separation of jury in embezzlement case before charge and under proper instructions held not ground for reversal.**

Separation of the jury, in prosecution for embezzlement of moneys from a bank, *held* not ground for reversal, where separation was without express consent of all parties, was before the charge was delivered to the jury, and was under proper instructions by the court not to discuss the case among themselves nor to permit any one to do so with any member of the jury or in his hearing.

Appeal from Seventeenth Judicial District Court, Parish of Terrebonne; Robert B. Butler, Judge.

J. A. Robichaux and J. A. Daspit were convicted of embezzlement of moneys deposited in a bank, and they appeal. Affirmed as to defendant Robichaux, and reversed and remanded for a new trial as to defendant Daspit.

Ellender & Ellender, of Houma, for appellant Daspit.

Harris Gagne, of Houma, for appellant Robichaux.

Percy Saint, Atty. Gen., J. A. O. Coignet, Dist. Atty., of Thibodaux (E. R. Schowalter, Asst. Atty. Gen., of counsel), for the State.

LAND, J. The defendants, Robichaux and Daspit, are the former vice president and cashier of the People's Bank & Trust Company, of Houma, La., and are jointly indicted as principals for the embezzlement of moneys deposited in said bank to the amount of $1,557.

Defendants were found guilty as charged, and each was sentenced to serve a term of 2½ years in the state penitentiary.

Both have appealed, and rely for the reversal of the conviction and sentence upon the following bills of exception:

Bills Nos. 1 and 1½, reserved by both defendants:

These bills were taken to the overruling of a motion to quash the indictment on the grounds that it denounces two separate and distinct offenses in one and the same count, and that section 907 of the Revised Statutes, under which the indictment is returned, has been repealed by Act 165 of 1918.

That act is an amendment of Act 31 of 1888, amending section 905 of the Revised Statutes, which defines embezzlements in ordinary cases by any servant, clerk, agent, mandatary, etc. The indictment in this case is not drawn under section 905, but under section 907 of the Revised Statutes, which reads as follows:

"Any president, cashier, teller or clerk, or other officer or person employed in the service of any bank chartered by this state, or which may be hereafter chartered by this state, who shall knowingly and willfully embezzle or convert to his own use, or shall knowingly aid and abet any person in embezzling or converting to his own use any money belonging to such bank, or deposited therein, shall, on conviction, be imprisoned at hard-labor, not more than seven, nor less than one year.".

[1] Act 165 of 1918, does not pretend to amend the section of the Revised Statutes under which defendants are indicted, and this particular ground of the motion to quash is, therefore, without merit.

[2] The indictment is drafted in the language of section 907 of the Revised Statutes, and is not amenable to the objection that it includes two separate and distinct offenses in the same count, merely because it charges that defendants "knowingly, willfully, and feloniously did embezzle *and* convert to their own use certain money, to wit, the sum of fifteen hundred and fifty-seven dollars, then and there deposited in the bank aforesaid."

It is proper and necessary that cognate offenses be charged conjunctively in one and the same count of the indictment. State v. Sullivan, 125 La. 560, 51 So. 588; State v. Barnette, 138 La. 693, 70 So. 614.

Bill No. 2, reserved by both defendants:

Motions for bills of particulars were filed by each defendant requiring information as to the ownership of the money charged to have been embezzled, and also as to the time when deposited in the People's Bank & Trust Company.

[3] The date of the deposit, in our opinion, is immaterial. It is made an offense under section 907 of the Revised Statutes for any officer of a state bank to embezzle or convert to his own use "money belonging to such bank, or deposited therein. As defendants are charged with embezzling money on deposit in a bank, it is clear that the question of ownership is unimportant in the present case, as the statute makes embezzlement of funds deposited in a bank a crime, regardless of ownership. Applications for the bills of particulars were, therefore, properly refused.

· · Bill·No. ·3, reserved by Robichaux:

[4] Objection was made by Robichaux to the offer of the state to introduce the confession of Daspit on the ground that, being on joint trial, the confession of his codefendant was not admissible.

As defendants are jointly indicted, evidence tending to show conspiracy between them is admissible, although the indictment does not expressly charge conspiracy in formal terms. State v. Ford, 37 La. Ann. 443, 459.

[5] Declarations made by a coconspirator during the execution of the common enterprise are admissible against his coconspirators, whether made in or out of their presence, but not if made after the common design has been consummated or abandoned, as they can then affect only him who made them. State v. Buchanan, 35 La. Ann. 89; State v. Bolden, 109 La. 487, 33 So. 571.

[6] As the confession complained of was made to the state witness Melancon after the commission of the embezzlement, the trial judge properly admitted such confession under instructions to the jury at the time, and in his final charge, to consider it only in relation to the codefendant, Daspit.

Bill No. 3, reserved by Daspit:

[7] On the trial of the case, the defendant Robichaux offered in evidence a statement or report furnished to the state bank commissioner, and signed by the president of the People's Bank & Trust Company, and by his codefendant, Daspit, as cashier. This report is of date April 12, 1926, and is sworn to by Daspit ·as cashier as being true to the best of his knowledge and belief. Tr. 53, 54.

A material portion of Daspit's testimony as a witness had a decided tendency to damage the case of the defendant Robichaux, as this testimony was to the effect that Robichaux was the actual embezzler, and that Daspit had acted only as an accessory after the fact in covering up the shortages of Robichaux.

As the report of the condition of the bank at the close of business on April 12, 1926, sworn to ·as correct by Daspit, as cashier, showed the resources intact and duly balanced by the liabilities, and no irregularities of any kind, we are of the opinion that the report offered in evidence was a matter affecting the credibility of Daspit as a witness, and was admissible for that purpose.

[8] While counsel for Daspit complains that counsel for Robichaux exhibited the bank report to the jury and depicted Daspit before them as a perjurer, falsifier, and a juggler of books, yet counsel for Daspit, though present and hearing these remarks, alleged to be so prejudicial to his client, made no request whatever at the time that the jury be charged in reference thereto. It is now too late to listen to such tardy complaints, in the absence of timely request for appropriate action and ruling by the judge a quo.

Bill No. 4, reserved by Robichaux:

This bill is similar to bill No. 3, and was taken to the admission of the confession of Daspit when offered by the state through the witness Melancon. The confession was confined to Daspit and the jury so instructed. The ruling was correct.

Bill No. 4, reserved by Daspit:

The defense of the codefendant Daspit was that he took no part in the embezzlement charged, and had knowledge of the crime only after its commission, and that he was, therefore, an accessory after the fact and could not be convicted as a principal, as indicted. After the completion of the charge, counsel for Daspit requested the trial judge to give the following special charge to the jury:

"Both of the accused are indicted as principals in the commission of the crime of embezzlement. In order to be guilty as principals, the law requires evidence beyond a reasonable doubt that the persons should actually commit the offense, or be present, actually or constructively, with knowledge of what is being

done, and with intention of aiding and abetting in the commission of the offense.

"One who is present, either actually or constructively, and aids and abets in the commission of a crime is a principal, because he had a common design with another to commit an offense, the said design being in the nature of a conspiracy between the actual perpetrator or perpetrators of the crime and the person or persons aiding and abetting as aforesaid.

"If you believe from the evidence that the embezzlement charged was the result of a common design between both accused, then both are guilty as principals. But if you believe from the evidence that the design to embezzle originated and was carried out by one of the accused only, he alone would be guilty as principal. If you believe from the evidence that the accused Daspit, had no knowledge of the crime being committed, and only became acquainted therewith after the commission thereof, that (then) he, Daspit, is not a principal and cannot be convicted as such.

"The law is that all persons aiding, advising, or abetting the commission of a crime are not principals; for the aiders, advisers, and abetters who are not present, actually or constructively, are accessories only, and to be convicted as an accessory a person must be indicted as such." Tr. 91, 92.

It is stated in the per curiam to this bill:

"It is true that there was evidence before the jury tending to fix upon defendant Daspit the character of an accessory after the fact; it is also true that other evidence before the jury, if accepted as true by the jury, would warrant the jury in its verdict."

The trial judge declined to give the requested charge upon the theory that the same had been substantially given in his general charge, which is not in the record.

We have read carefully the charge given to the jury, as stated by the trial judge in the bill, but we fail to discover anything in this charge, except the law relating to principals, and the circumstances under which defendants, indicted as principals, may be found guilty or not guilty.

There is not one word in this charge with reference to accessories, either before or after the fact. There is no definition in the charge of an accessory after the fact, al-

though expressly requested. Necessarily, the jury had no legal guide before them to assist them in drawing the clear legal distinction between a principal and an accessory after the fact in a case of embezzlement.

There is a radical difference, under the criminal laws of this state, between the degree of punishment that may be inflicted upon a principal and upon an accessory after the fact. Section 972 of the Revised Statutes of 1870, provides that:

"Whoever shall be convicted as *accessory before the fact* to any crime or offense, shall suffer the same kind and extent of punishment, according to the circumstances of the case, as might lawfully be inflicted *upon the principal offender* for such crime or offense." (Italics ours.)

It is declared, however, in section 973 of the Revised Statutes, that:

"Whoever shall be convicted as *accessory after the fact* to any crime or offense shall suffer *fine or imprisonment, or both,* at the discretion of the court." (Italics ours.)

An accessory after the fact, on conviction, may be subjected in this state to a fine not exceeding $1,000, or to imprisonment for not more than two years in the parish prison. R. S. 1870, § 982.

On the other hand, a principal, indicted for embezzlement under section 907 of the Revised Statutes, "shall, on conviction, be imprisoned *at hard labor* [or in the penitentiary] not more than seven, nor less than one year." (Italics ours.)

The requested special charge was, therefore, a matter of vital importance to the codefendant Daspit on the trial of this case.

It was exclusively within the province of the jury to determine, under a proper legal charge, whether the codefendant Daspit was guilty as principal, or whether he was a mere accessory after the fact, and entitled to acquittal under the present indictment returned against him as a principal.

[9] As there was evidence before the jury tending to show that the codefendant Daspit was an accessory after the fact, he had a clear right to have them instructed as to the meaning of accessory after the fact and as to the law applicable thereto, as the charge must cover every phase of the case supported by evidence, whether accepted as true or not by the trial judge. State v. Tucker, 38 La. Ann. 789; State v. Irvine, 126 La. 434, 52 So. 567; State v. Atkins, 136 La. 844, 67 So. 926.

In State v. Walters, 135 La. 1103, 66 So. 376, the court said:

"All persons aiding, advising, or abetting the commission of a crime are not principals; for the aiders, advisers, and abettors who are not present, actually or constructively, are acessories. And, to be convicted as an accessory a person must be indicted as such."

The Walters Case is approved and followed in State v. Mullen, 160 La. 930, 107 So. 698.

[10] The refusal of the judge a quo to give the special charge requested constitutes clear prejudice and injury to the defendant Daspit, and necessitates the setting aside of the conviction and sentence as to him.

Bill No. 5, reserved by Daspit:

The chief ground for the motion for new trial, filed by the defendant Daspit, is based upon the contention that the whole defense of this defendant rested upon the legal principle that an accessory after the fact cannot be tried and convicted as a principal, but should be charged as an accessory.

[11] As there was evidence before the jury to the effect that Daspit was an accessory after the fact, and as the trial judge refused to instruct the jury as to the law applicable to accessories, although specially requested to do so, the overruling of the motion for new trial was also reversible error.

Bill No. 5, reserved by Robichaux:

When the state closed its case, subject to rebuttal, the codefendant Robichaux agreed to submit the case on the testimony of the state without argument. An adjournment was then requested by the codefendant Daspit until next day, and was granted. On the convening of the court after adjournment, Daspit took the witness stand in his own behalf, and, as his sole defense in this case is that he was an accessory after the fact and not a principal as indicted, he testified to this effect in detail. Counsel for Robichaux objected to this evidence "on the ground that he could not defend himself at the same time against the state and his codefendant."

[12] This objection is frivolous, as the codefendant Daspit had the legal right to make and to support his defense by his own testimony, however much Robichaux may have been affected thereby. Act 157 of 1916.

Bill No. 6, reserved by Robichaux:

[13] It is stated in this bill by counsel for Robichaux that he objected to an attempt on the part of the state to prove by Melancon the alleged confession of Daspit to the effect that the embezzlement was committed in 1918, on the ground that the offense was prescribed by the lapse of one year, and, as the indictment charged the offense as of date January 1, 1927, the allegation in the indictment negativing prescription contradicted the indictment and was mere surplusage.

The indictment was returned and filed against the accused on April 19, 1927. The defendants are charged with committing the embezzlement on January 1, 1927. It is alleged in the indictment:

"That the commission of the aforesaid offense by the said J. A. Robichaux and the said J. A. Daspit in the manner and form as above charged and stated was never made known to any officer authorized and empowered to direct a prosecution of the same until the month of April, 1927."

The trial judge did not consider the plea of prescription well taken, as there was evidence already before the jury of an act of embezzlement committed within less than a

year of the date laid in the indictment. The jury, moreover, were instructed to disregard the confession of Daspit in considering the case against the defendant Robichaux. The bill is without any merit.

Bill No. 7, reserved by Robichaux:

This bill is taken to the refusal by the trial judge to grant a new trial to the defendant Robichaux.

It is made to appear in this bill that the sole ground for the refusal of the motion for a new trial was "that the jury was the sole judge of the facts in a criminal trial, and that the trial judge was without right to disturb the findings of a jury on a question of facts."

The judge a quo assigned no such reason for overruling the motion for new trial. It is expressly stated in the per curiam to this bill that the testimony before the jury was sufficient to establish a shortage or defalcation during the latter part of 1926 and on the day the bank closed. The verdict, as to the defendant Robichaux, was approved by the trial judge because supported by the evidence in the case. Tr. 78.

The application for a new trial by the defendant Robichaux is a mere reiteration of the objections already reviewed under the various bills of exception reserved by this defendant, with the following additional complaints:

[14] 1. As to denial of the right to severance:

No formal bill appears in the record as to this point. The motion for severance is found at page 20 of the record. The minutes of the trial court show that this motion was argued and overruled, and that no bill was reserved. Tr. 4.

Moreover, the confession of the codefendant Daspit was restricted in instructions to the jury entirely to him.

2. As to public indignation prevailing during trial:

[15] We find no evidence in the record to sustain such charge. No motion for change of venue, the proper remedy in such cases, was made in order to avoid conviction through public prejudice.

3. As to separation of the jury and the mixing of its members "with a large and angry audience of bank depositors":

[16] As this is not a capital case, the jury could have separated, under proper instruction, until the charge was delivered to them, even though counsel for the accused did not consent to such separation. It is a matter resting within the discretion of the trial judge. State v. Baudoin, 115 La. 773, 40 So. 42; State v. Spurling, 115 La. 791, 40 So. 167; State v. Craighead, 114 La. 84, 38 So. 28; State v. Antoine, 52 La. Ann. 488, 26 So. 1011; State v. Magee, 48 La. Ann. 901, 19 So. 933; State v. Populus, 12 La. Ann. 710; State v. Hornsby, 32 La. Ann. 1268; State v. Evans, 21 La. Ann. 321; State v. Crosby, 4 La. Ann. 435; State v. Hornsby, 8 Rob. 554, 41 Am. Dec. 305.

[17] The separation of the jury in this case took place, with the express consent of all parties, before the charge was delivered to the jury, and under proper instructions by the court not to discuss the case among themselves, nor to permit any one to do so with any member of the jury, or in his hearing.

The trial was decorous throughout, with the exception of an interruption occasioned by the applause of a single bystander, elicited by the remarks of the district attorney to the jury. The culprit was promptly punished for contempt, and the offense was not repeated during the remainder of the trial.

The motion for new trial was properly overruled as to the defendant Robichaux.

It is ordered that the conviction and sentence of the lower court as to the defendant J. A. Robichaux be affirmed.

It is further ordered that the conviction and sentence of the lower court as to the de-

fendant J. A. Daspit be set aside and reversed, and that this case be remanded, as to him, for a new trial.