(138 So. 124)

**STATE v. RODOSTA.**
No. 31273.

Nov. 3, 1931.

624

Charles A. Holcombe, of Baton Rouge (Pike Hall, of Shreveport, of counsel), for appellant.

Percy Saint, Atty. Gen., John Fred Odom, Dist. Atty., of Baton Rouge, E. R. Schowalter, Asst. Atty. Gen., and Fred S. Le Blanc, Asst. Dist. Atty., of Baton Rouge, for the State.

ODOM, J.

The defendant and his wife, Mrs. May Rome Rodosta, were charged with the crime of murdering their child, May, an infant seven days old. The indictment against them charged that they "did feloniously, wilfully, and of their malice aforethought kill and murder one May Rodosta."

Mrs. Rodosta, on her own motion, was granted a severance, and has not been tried. Peter Rodosta was tried, convicted, as charg-

ed and sentenced to death. From the verdict and sentence he appealed.

We find in the record ten bills of exception, nine of which were taken during the progress of the trial, and one to the ruling of the court refusing to grant a new trial. Bills 1, 2, 3, 4, and 5 all pertain to the charge delivered to the jury by the trial judge or to his refusal to give special charges requested by counsel for defendant. As they all relate practically to the same subject-matter, we shall discuss them as one.

1–5. It is pertinent to state here that the defendant concedes that his infant child was murdered. But it is contended that he did not perpetrate the deed; that the child was killed by his wife, its mother, during his absence; that he was not present, actually or constructively, when the child was killed, and therefore, if it should be found that in fact he did have some connection with the crime, he could not be convicted under the indictment which charged that he was a principal; that at most he was only an accessory to the crime, and as such could not be convicted as a principal, and he urged that defense before the trial court.

We have read the testimony attached to the various bills of exception. It is unnecessary to go into detail as to what it shows, as it is not within the province of this court to pass upon the guilt or innocence of the accused.

■ It is sufficient only to state that there was testimony before the jury which tended to support defendant's plea, that is, that he was not present, actually or constructively, when the child was killed.

The trial judge in his per curiam to bill No. 5 correctly summarizes the testimony pertinent to the issue here involved as follows: He said:

"The proof introduced by the state tended to show that Peter Rodosta either killed the child by his own hands, or caused or procured its killing, during his absence, at the hands of his wife."

The defendant having set up the plea that he was not present, either actually or constructively, when the child was killed, and there having been introduced some testimony tending to establish that plea, counsel requested the trial judge to deliver the following special charges:

"A person may participate in the commission of a homicide either as a principal or as an accessory. A principal in a homicide is one who was present, either actually or constructively, at the place of the crime, participating or aiding in the commission thereof. An accessory is one who was not the chief actor in the commission of the crime, but in some way connected with it either before or after the commission of the act. Therefore, if a person does nothing more than procure, advise or assist, not being present, actually or constructively he is only an accessory. The distinction between a principal and an accessory is that a principal is one who actually does the criminal act or actually participates in doing it, whether actually or constructively present, or who is actually present at the time of doing it, aiding and abetting; while an accessory is one who has such connection with the crime by reason of preparation, procurement, encouragement, or assistance as to be deemed criminally liable, though he does not participate in the actual commission of the crime and is not present thereat."

The court refused to give this special charge, but instead instructed the jury as follows:

"All persons are principals who are guilty of acting together in the commission of the crime charged in the indictment in this case. And all persons concerned in the commission of such crime, whether they directly commit the act constituting the offense, or aid, abet, advise, assist, counsel or command its commission, though not present, actually or constructively, may be charged, tried and convicted as principals."

"In the crime of murder, every person concerned therein, whether present actually or constructively at the commission of the crime, or absent, is a principal, and may be charged, tried and convicted as such, provided it is shown that such absent person aided, abetted, counseled or commanded its commission."

It is not true as a matter of law that in the crime of murder "every person concerned therein, whether present actually or constructively at the commission of the crime, or absent, is a principal."

Under section 976 of the Revised Statutes of this state, "all crimes, offenses and misdemeanors shall be taken intended and construed, according to and in conformity with the common law of England."

Under the common law, those who participate in the commission of a felony are divided into two general classes, principals and accessories. The principal, as that term is generally used, is he who is the actor or actual and immediate perpetrator of the crime. An accessory is one who participates in a felony too remotely to be deemed a principal. An accessory before the fact is a person "Whose will contributes to a felony committed by another as a principal, where he is too far away to aid in the felonious act." Bishop's Criminal Law (9th Ed.) § 673.

One "concerned in a felony" may be a principal under the common law and under our own jurisprudence, even though not the chief actor or the actual and immediate perpetra-

tor of the crime. One person may be the chief actor or perpetrator of the deed, and therefore a principal. Another, though not the chief or principal actor, may so aid and abet the commission of the crime as to become a principal. But, where more than one person participates or takes part in a felony, "no one will be a principal as abetting him (the chief actor) unless in a position to render, if necessary, some personal assistance. Assuming one's will to contribute to the act, the test to determine whether he is a principal rather than an accessory is, whether he is so near or otherwise so situated as to make his personal help, if required, to any degree available. He need not be in the actual presence of the other principal; but if he is constructively there, as thus explained, it is enough." Bishop's Criminal Law (9th Ed.) § 663.

In the case of State v. Poynier, 36 La. Ann. 572, the court used almost the identical language as that found in Bishop. The court said:

"Where there is a principal—and there can be no crime without one—no other person will be considered a principal with him unless in a position to render personal assistance of some kind. The test to determine whether he is principal rather than accessory is, whether he is so situated as to make his personal help available—not actual physical help necessarily, but help of any kind—not help rendered in or by actual presence, but constructive presence as well."

The organ of the court then proceeds to illustrate the manner in which one, though not the chief actor, may become a principal. He says:

"Thus, if he watched near or at a distance to prevent his companions being surprised, or stationed himself to give the alarm to favor their escape, or was in such situation as

to come to their assistance so that the knowledge of this watching or position or situation inspired or was calculated to inspire his companions with additional confidence, and enable them quicker or safer or more effectually to commit their crime, then he is a principal." 1 Bishop's Criminal Law, § 673. 1 Wharton's American Criminal Law, § 116.

In State v. Walters, 135 La. 1070, 1103, 66 So. 364, 376, the court said:

"All persons aiding, advising, or abetting the commission of a crime are not principals; for the aiders, advisers, and abetters who are not present, actually or constructively, are accessories."

This statement of the law was quoted with approval in the cases of State v. Mullen, 160 La. 925, 107 So. 698; State v. Robichaux et al., 165 La. 497, 115 So. 728; and State v. La Rocca et al., 168 La. 204, 121 So. 744.

See "Principals and Accessories," Marr's Criminal Jurisprudence (2d Ed.) vol. 1, p. 71.

▆▆▆ According to all law writers, and as settled by our own jurisprudence and that of other states, one who is not the actual perpetrator of a felonious act, but who aids, abets, counsels, or procures its commission, is not a principal, unless actually or constructively present at the commission of the crime.

Constructive presence means being so situated when the crime is committed as to be able to assist in its commission; that is, to be able to render some assistance, whether by watching to prevent his companions from being surprised, or stationed so as to give an alarm in order to aid in their escape, or stationed as to come to their assistance if necessary; that is, so stationed or situated as to be helpful to the end in view.

The accused in this case was indicted as principal. If in fact he was "concerned" in the commission of the crime by counseling

or advising or procuring its commission, but not present at the time, either actually or constructively, aiding and abetting, he was not, as a matter of law, guilty as principal, and could not be legally convicted as such. Proof that an accused person is an accessory to a felony is an absolute bar to a conviction as a principal.

"An accessory can not be convicted on an indictment charging him as principal." Wharton's Criminal Law (7th Ed.) par. 143; State v. Accardo et al., 129 La. 666, 56 So. 631.

Section 784 of the Revised Statutes provides that, "whoever shall commit the crime of willful murder, on conviction thereof, shall suffer death," and section 972 that "whoever shall be convicted as accessory before the fact to any crime or offense, shall suffer the same kind and extent of punishment, according to the circumstances of the case, as might lawfully be inflicted upon the principal offender for such crime or offense."

Under section 1058, Revised Statutes, an accessory may be tried irrespective of whether the principal has been or is being brought to justice or not. State v. Accardo, supra; State v. Prudhomme, 171 La. 143, 129 So. 736.

A number of states in the Union have enacted statutes, some in the form of criminal codes abolishing the common-law distinction between principals and accessories before the fact. These statutes as a rule provide that one who aids, assists, abets, advises, or encourages another to commit a crime shall be deemed or declared in law to be a principal, and be punished accordingly.

But no such statute has been adopted in this state. On the contrary, section 976 of the Revised Statutes is still in force. State v. Accardo, supra.

Mr. Justice Manning, in the case of State v. Poynier, supra, said:

"The distinction between principals and accessories before the fact is in most cases a distinction without a difference, and often requires nice and subtle verbal refinements to express it."

Bishop, in his latest work on criminal law, says the distinction is a pure technicality. But, he says, "Having, however, become established as a technical rule, it cannot be removed by the courts."

The distinction has not only been established in this state as a "technical rule," but is recognized and established by statute. It is not within the province of this court to abolish the distinction.

The charge delivered to the jury by the trial judge in this case was contrary to the common law and the established jurisprudence of this state, and was necessarily prejudicial to the defendant's case. His plea was that he was not guilty as a principal, and that at most he was no more than accessory to the crime. There was testimony introduced which tended to establish that plea. Whether it did or did not establish such plea is beside the question. Having made the plea, and there being some testimony to establish it, he was entitled to proper instruction by the court as to the distinction between principals and accessories before the fact, so that the jurors, who under the law are the sole judges of the facts, could reach their own conclusion as to whether the defendant was guilty as principal or only an accessory. For aught we know, the jurors may have found from the evidence and believed that the accused did counsel, advise, or procure the slaying of the child, and have found from the evidence and believed that he was not present, either actually or constructively, aiding and abetting the commis-

sion of the crime. If they so found and believed, they should, and no doubt would have, under proper instructions, acquitted the accused. But under such findings, it being their duty to take the law as given them in charge by the court, they were bound to convict him, for they were told that, "in the crime of murder, every person concerned therein, whether present actually or constructively at the commission of the crime, or absent, is a principal, and may be charged, tried and convicted as such, provided it is shown that such absent person aided, abetted, counseled or commanded its commission."

The trial judge, as well as the district attorney who argued the case before the court, concede, as they must, being learned in the law as they are, that, prior to the adoption of our Code of Criminal Procedure, the above charge would have been erroneous. But it is contended by counsel for the state, and was so held by the trial judge, that article 238 of that Code has abolished the distinction between principals and accessories in this state.

The trial judge says in one of his per curiams:

"I charged the jury, as set out in the attached bill of exceptions, for the reason that in my opinion, the distinction between a principal and an accessory before the fact in murder cases in this state has been abrogated by Art. 238 of the Code of Criminal Procedure."

That article of the Code reads as follows:

"Except in those cases in which the aiding and abetting in or the procuring of the commission of a designated crime is made a distinct offense, it shall be unnecessary in any indictment to allege that defendant did aid and assist in or procure the commission of the crime charged, but the aider and abetter and the accessory before the fact may each be indicted as a principal, that is to say,

charged directly with the commission of the crime."

If indeed this be valid legislation, the trial judge has made no mistake, because the article as written unquestionably does abolish the distinction referred to. If accessories before the fact may be legally "indicted as principals" and "charged directly with the commission of the crime," it follows necessarily that they may be convicted as principals, convicted "directly with the commission of the crime"; and it follows also that they are guilty as principals.

But for this legislative enactment, it is conceded that such cannot be done, and that such is not true.

In the state of Arkansas, under section 1238 of Gantt's Digest, it is provided "that one who aids, assists, abets, advises or encourages another in the commission of a crime shall be deemed in law a principal, and punished accordingly."

Under the Penal Code of New York (section 29), "a person concerned in the commission of a crime, whether he directly commits the act constituting the offense or aids and abets in its commission, and whether present or absent, and a person who directly or indirectly counsels, commands, induces or procures another to commit a crime, is a principal."

In People v. Bliven, 112 N. Y. 79, 19 N. E. 638, 8 Am. St. Rep. 701, it was held that the purpose and effect of this section of the Penal Code was to abolish the distinction which heretofore existed in cases of felony between a principal and an accessory before the fact.

The states of California, Michigan, Illinois, and probably others, have similar statutes, adopted, not as rules of procedure, but as substantive law. The courts of those states have held that, the statutes having declared such

persons principals, there was no reason why they may not be indicted, tried, and convicted as such. In other words, the courts in those states have held that under, those statutes one may be indicted, tried, and convicted as a principal, even though not present actually or constructively at the commission of the crime.

These cases, and especially that of People v. Bliven (N. Y.) supra, are cited in support of the contention that, since the adoption of our Code of Criminal Procedure, an accessory before the fact may be "indicted as a principal, that is to say, charged directly with the commission of the crime," as is provided in article 238. But it must be borne in mind that the statutes of the other states referred to were enacted as substantive penal laws and not as acts to regulate criminal procedure. There is a vast difference between substantive law and procedural law.

■■■ As relates to crimes, substantive law is that which declares what acts are crimes and prescribes the punishment for committing them. Procedural law is that which provides or regulates the steps by which one who violates a criminal statute is punished. "Criminal Procedure" refers to pleading, evidence, and practice. See "Procedure" in Words and Phrases, First, Second, and Third Series; 50 Corpus Juris, p. 425; Webster's Unabridged Dictionary.

■■ An amendment to the Constitution adopted on November 5, 1926 (see Act No. 262 of 1926), authorized the Governor to appoint a commission "to prepare a draft of a Code of Criminal Procedure for the State of Louisiana." Pursuant to this constitutional provision, the Code was drafted and the Legislature adopted it in 1928. The Legislature could go no further than authorized by the Constitution; that is, adopt a Code of Procedure, a law relating to criminal proceedings.

The Code itself defines a criminal proceeding. Article 1 under title 1 reads as follows:

"A criminal proceeding is a prosecution instituted and carried on in the name of the State before a court of criminal jurisdiction for the purpose of bringing to punishment one who has violated a criminal law."

The Legislature could not, by adopting the Code of Criminal Procedure, change the substantive law of the state because no such authority was conferred by the Constitution.

■■ Article 238, however, does in effect make such change. Under it an accessory before the fact may be indicted as a principal, "charged directly with the commission. of the crime." If one may be indicted for the commission of a crime, it follows that he may be convicted as charged. But under our law an accessory before the fact to murder cannot be convicted of murder, and vice versa.

Under Rev. St. § 972, he may have inflicted upon him the kind and extent of punishment as may be inflicted upon the murderer himself. But nevertheless he cannot be charged or convicted as such.

Learned counsel for the state in their elaborate brief, page 53, concede that, under the law as it existed prior to the attempted change, proof that one was an accessory before the fact was an absolute defense to the crime of murder. They say:

"Under our law, prior to the adoption of the said Article 238 of the Criminal Code, under an indictment for murder, one of the defenses which could be urged was that the accused was an accessory before the fact to the crime of murder, and on proof of that fact alone, he was entitled to an acquittal. Proof of his actual presence was necessary to maintain a conviction under an indictment for

murder. A verdict of guilty of the crime of accessory before the fact was not responsive to a charge of murder, and, of course, that being the law, the judge was required to charge the law applicable to an accessory before the fact when there was any evidence to that effect whatsoever produced on trial. But now the situation is different."

"We contend that when the Grand Jury elects to indict an accessory before a fact as a principal (which right is given them under the said Article) then proof that one is an accessory before the fact is not a defense. Then why should the Judge be required to deliver a charge on this subject?"

If this be the correct view, then it must be conceded that article 238 of the Code has made a complete, glaring change in the substantive law of the state, in this respect at least, by depriving an accused of a defense which our law recognizes.

The Legislature, in adopting article 238 of the Code, transcended its constitutional authority, and that article is therefore unconstitutional, null, and void.

Bills 6 and 7 were reserved to certain remarks made by the district attorney in the course of his argument, which counsel for the defendant construed to be an appeal to race prejudice.

The remarks objected to were as follows:

"I say, this jury, from the testimony you have heard and what you have observed, will have no difficulty in drawing the conclusion that Mrs. Rodosta married beneath herself. Now, gentlemen, you know what sort of trouble that starts; the pride people have about breeding, about education, saying nothing of race."

And again:

"Now who had the motive? Peter Rodosta. Remember this, gentlemen, and I am not saying this to be snobbish; I am not saying this as a reflection on him, but the man's position in society, his breeding, his family were not the equal of her family; they are not of the same race. She married beneath herself."

It appears that Peter Rodosta is an Italian and his wife's family are of French extraction. It further appears that their child was conceived before their marriage, which fact was not known to the parents of the wife, but which would necessarily become known to them upon being apprised of the date of the child's birth. The state advanced the theory that the motive which prompted Peter Rodosta to kill the child was to conceal the fact and date of its birth from his wife's parents in order that they might not know of the illicit relations between the two; it being suggested that Peter Rodosta apprehended that, if knowledge of these illicit relations were made known to the wife's father, he would probably seek to avenge this wrong, especially in view of the fact that he was already angry because his daughter had "married beneath herself."

We do not think these remarks were prejudicial to defendant as an appeal to race prejudice. All the facts were before the jury, and they understood the purpose of the district attorney's remarks.

Bill No. 8 was reserved to a statement by the district attorney in his argument as to what he conceived to be the law applicable to the case. While we think this statement made by him was erroneous, yet it is unnecessary to comment upon it, as the entire subject matter has been disposed of under bills 1–5.

Bill No. 9 was reserved to the court's refusal to grant a new trial and bill No. 10 to the form of the verdict, which was as follows:

"The jury agrees that Peter Rodosta as a principal in this case is guilty as charged, and so renders its verdict."

The points urged in these bills have been fully discussed and disposed of under bills 1–5.

For the reasons assigned, the verdict and sentence are annulled and set aside, and it is ordered that the case be remanded for further disposition according to law.

ROGERS, J., concurs in the decree, assigning reasons.

O'NIELL, C. J., concurs, assigning reasons.

ROGERS, J. (concurring).

I do not think that article 238 of the Criminal Code abolishes the crime of accessory before the fact. The article permits, but does not require, that an accessory before the fact be indicted as a principal. In my opinion, the change effected in the law by the codal provision is procedural only, relating solely to the method of indictment. The purpose of the provision is, perhaps, to simplify criminal proceedings, so that an accessory before the fact may be charged as a principal and convicted on the indictment as an accessory before the fact, if the evidence discloses that the accused is an accessory before the fact and not a principal.

Hence, under the defense of the appellant that he was not a principal, but at most only an accessory, to the crime charged in the indictment, on which defense some evidence appears to have been adduced, I think he was entitled to have the jury charged, as he specially requested, on the legal distinction between the two offenses, so that the jury might determine, under proper instructions, of which offense he was guilty, or whether he was guilty of either.

For these reasons, I concur in the decree annulling the conviction and sentence appealed from and remanding the case to the district court for further proceedings.

O'NIELL, C. J. (concurring).

I subscribe to the decree rendered in this case, but my opinion is that the decision ought to be considered as authority for the proposition only that, where a person is indicted as a principal, and the state undertakes to convict him on proof that he was an accessory before the fact, he has the right to have the jury instructed on the law as to what constitutes an accessory before the fact. Conceding, for the sake of argument, that article 238 of the Code of Criminal Procedure is constitutional, the verdict and sentence in this case must be set aside because of the judge's refusal to charge the jury on the law defining accessories before the fact. Hence it is not necessary to adjudge the article of the Code of Criminal Procedure unconstitutional.