LAND, Justice.
 

 John Capaci and George Daleo were indicted on January 16, 1933-, for the murder of Charles Habito in the parish of Jefferson. Both defendants made confessions, in which each charged the other with the actual murder of Charles Habito, and both applied for and obtained a severance on the ground of antagonistic defenses. Each defendant was tried separately and found guilty of murder as charged. From a judgment condemning to death the defendant, John Capaci, an appeal has been taken to this court.
 

 (1) Bill of Exceptions Nos. 1, 2, and 3.
 

 Bill No. 1 was reserved to the overruling of a motion to quash the indictment.
 

 The indictment charges that: “John Capaci and one George Daleo *
 
 *
 
 * wilfully, unlawfully and feloniously murdered one Charles Habito. * * * ”
 

 The indictment is drawn under the short form authorized by article 235 of the Code of Criminal Procedure, which declares that it shall be sufficient in case of murder to charge that “A. B. murdered C. D.”
 

 Before considering the grounds of the motion to quash, we deem it proper to state that Act No. 262 of 1926 is a joint resolution, “Proposing an amendment to the Constitution of the State of Louisiana authorizing the Governor to appoint a commission to prepare a draft of a Code of Criminal Procedure for the State of Louisiana; the manner of submitting said draft of a Code of Criminal Procedure to the Legislature of Louisiana; prescribing the method of amending said draft and the promulgation of said Code when adopted; the composition of the Code Commission; the compensation of the commissioners and the payment of expenses incident to the preparation of said Code.”
 

 This proposed amendment was adopted November 2, 1926.
 

 The Legislature by Act No. 2 of 1928 adopted the Code of Criminal Procedure; this act being identical with Senate Bill No. 56, presented and adopted in compliance with Act No. 262 of 19-26.
 

 The motion to quash the indictment is based upon the following grounds:
 

 (a) That “malice aforethought” is an essential ingredient of the crime of murder, and, as there can be no murder without malice aforethought, the short form of indictment for murder has changed the substantive law, in that it omits to charge that the homicide was committed with “malice aforethought.”
 

 (b) That articles 227, 229, 234, 235, and 248 of Act No. 2 of 1928, Code of Criminal Procedure, are unconstitutional per se, in that they seek to change substantive law, and thus divest defendant of his constitutional guaranty,
 
 *471
 
 both under the state and Federal Constitutions (Const. La. 1921, art. 1, §§ 2, 6,10'; Const. U. S. Amend. 14), of equal protection of the law, due process of law, and of the right to be informed, of the nature and cause of the accusation against him.
 

 (c) That the Code of Criminal Procedure is unconstitutional in its entirety, as the legal requirements for its adoption have not been complied with.
 

 In bill of exception No. 2, reserved to the overruling of a plea to the jurisdiction, and in bill of exception No. 3, reserved to the overruling of a motion for continuance, article 333 of the Code of Criminal Procedure is added to the above articles as unconstitutional per se, and the attack upon the constitutionality of the Code of Criminal Procedure as a whole is reiterated.
 

 We find it convenient, therefore, to discuss and dispose of all of these bills under the heading of Bills of Exceptions Nos. 1, 2, and 3, as far as the issue raised as to the unconstitutionally per se of these articles of the Code of Criminal Procedure is- concerned.
 

 In State v. White, 172 La. 1045, 136 So. 47, this court said in part: “The motion to quash was overruled by the trial judge for the reason that the indictment conforms to the provisions of the Code of Criminal Procedure of the state. It is provided in article 235 of the Code of Criminal Procedure that: ‘The following forms of indictments may be used in the cases in which they are applicable, but any other forms authorized by this or any other law of this State may also be used: * * ' * Murder — A. B. murdered O. D.’
 

 “The present indictment complies with the form prescribed by article 235 of the Code. The -word ‘murder,’ as used in that article, was deemed by the compilers of the Code, and by the lawmakers in adopting the Code, to be sufficient to include in its legal significance the unlawful killing of a human being -with malice aforethought. The short form of indictment for larceny and perjury allowed by-article 235 of the Code has been approved by. this court, and as ‘murder’ is a word of universal and common meaning, no citizen of average intelligence could fail to understand the significance of a charge of - murder preferred against him. State v. Abeny, 168 La. 1135, 123 So. 807; State v. Miller, 170 La. 51, 127 So. 361.
 

 “The indictment, as confected,' does not, in our opinion, deprive defendant of due process of law, nor deny to him his constitutional right to be informed of the nature and cause of the accusation against him.”
 

 Defendant in this case is apprised by the indictment with all necessary certainty that the crime with which he is charged is murder, and this satisfies the requirement of Amendment 6 to the Federal Constitution, that the accused be informed as to the nature and cause of the accusation. U. S. v. Mills, 7 Pet. 142, 8 L. Ed. 636; U. S. v. Cook, 17 Wall. 174, 21 L.Ed. 538; State v. Bartley, 34 La. Ann. 149; State v. Granville, 34 La. Ann. 1088.
 

 The indictment in the White Case, above cited, merely charged that defendant “murdered” the deceased.
 

 In the case now before us, the indictment charges that defendants “wilfully and feloniously murdered” the deceased.
 

 
 *473
 
 Since the word “murdered” used in the indictment in this case is “sufficient to include in its legal significance the unlawful killing of a human being with malice aforethought,” as held in the White Case, the addition of the words “wilfully and feloniously” is an unnecessary allegation, and must be rejected as surplusage, under article 240 of the Code of Criminal Procedure. See, also, State v. Leonard, 162 La. 362, 110 So. 557.
 

 Articles 227, 229, and 234 of the Code of Criminal Procedure relate to recitals requisite in indictments in general, and articles 235 and 248 of the Code relate to recitals in indictments for certain crimes.
 

 Article 235 provides for the short form of indictment in certain cases, cited in that article, and gives the form: “Murder — A. B. murdered C. D.”
 

 This article also states that any other forms “authorized by this or any other law of this State may also be used.”
 

 Article 248 declares that: “In all indictments for murder and manslaughter it shall not be necessary to sot forth the manner in which nor the means by which the death of the deceased was caused; but it shall be sufficient in any indictment for murder to charge that the defendant did murder the deceased; and it shall be sufficient in manslaughter to charge that the defendant did kill the deceased.”
 

 The above articles, in our opinion, deal exclusively with the confection of indictments, a matter of pleading, and do not change the substantive law as to the essential
 
 elements
 
 of the crime charged.
 

 In State v. Bussa, 176 La. 104, 145 So. 276, 282, it is said: “In State v. Rodosta, 173 La. 623, 138 So. 124, 127, this court said: ‘There is a vast difference between substantive law and procedural law. As relates to crimes, substantive law is that which declares what acts are crimes and .prescribes the punishment for committing them. Procedural law is that which provides or regulates the steps' by which one who violates a criminal statute is punished. “Criminal Procedure” refers to pleading, evidence, and practice.’
 

 “The change in the law, to which defendant refers, is clearly a change in the pleading, that is, in the procedure, required in criminal prosecutions. If this were not so, the mere allegation negativing prescription could not as provided in article 9 of the Code of Criminal Procedure shift the burden of proving the accrual of prescription on the person alleging it.”
 

 As neither article 235 of the Code of Criminal Procedure nor any of the articles referred to by defendant deals with substantive law, but relates solely to the ‘ confection of indictments, Act No. 2 of 1928, Code of Criminal Procedure, cannot be declared unconstitutional as to these articles, under the contention of defendant that they relate to substantive law, and not to pleading, or procedural law.
 

 (2) Bills Nos. 2 and 3.
 

 Bill of exception No. 2 was reserved to the overruling by the trial judge of defendant’s plea to the jurisdiction, and bill of exception No. 3 was reserved to the overruling by the trial judge of defendant’s motion for a continuance.
 

 
 *475
 
 Both of these bills are based upon the alleged failure of the Legislature, and of the House of Representatives, particularly, to properly enact a Code of Criminal Procedure.-
 

 The facts are that the Senate finally passed Senate Bill No. 50 by Mr. Holcombe (which, in due course, became Act No. 2 of 1928), and then, by a separate vote taken on a verbal motion, also adopted the draft of the Code of Criminal Procedure, which was the subject of Senate Bill No. 56. The House, however, only voted for the final passage of Senate Bill No. 56, and did not, by a separate vote, adopt the Code draft, as the Senate had done.
 

 Under this state of facts, able counsel for defendant contend:
 

 First. That Act No. 2 of 1928 (Senate Bill No. 56) never became a law because, as an act of the Legislature, it was never promulgated, and that only the Code itself was dispensed from promulgation under the constitutional amendment authorizing it.
 

 Second. That the Code draft itself was never adopted by the Legislature, because the House failed to take a specific vote adopting it, but merely voted the passage of Senate Bill No. 56, referring to and embracing it.
 

 The bill introduced by Senator Holcombe was entitled: “Senate Bill No. 56.
 
 An act to adopt a Code of Criminal Procedure
 
 for the State of Louisiana, pursuant to Act 262 of the Legislature of 1926, being a joint resolution proposing an amendment to the Constitution of 1921 of the State of Louisiana, authorizing the Governor tp appoint a commission to prepare a draft of Code ofl Criminal Procedure for the State of Louisiana, adopted as Amendment No. 6 at the official ballot, as voted on throughout the State on November 2, 1926.”
 

 This bill was passed in the Senate by a vote ofl 37 yeas to 1 nay, and in the House by a vote of 87 yeas to 4 nays.
 

 The action of the Senate in adopting the Code of Criminal Procedure draft, on verbal motion and by a separate vote, after the passage of the H'oleombe Senate Bill No. 56,
 
 adopting
 
 a Code of Criminal Procedure, was wholly unnecessary, in our opinion.
 

 It is difficult for this court to understand how able counsel for defendant, can logically contend that by enacting an act, whose only purpose was to adopt a Code, the House of Representatives nevertheless failed to adopt that Code.
 

 This court on several occasions has stated that the Code of Criminal Procedure was
 
 enacted:
 
 “Act No. 262 of 1926, as a proposed (constitutional) amendment was adopted, and Code of Criminal Procedure for the State of Louisiana, pursuant to said Act,
 
 -was enacted
 
 by Act No. 2 of the Legislature of 1928.” (Italics ours.) State v. Warren, 171 La. 553, 131 So. 668.
 

 “An amendment to the Constitution adopted on November 5, 1926 (see Act No. 262 of 1926), authorized the Governor to appoint a commission ‘to prepare a draft of a Code of Criminal Procedure for the State of Louisiana.’ Pursuant to this constitutional provision,
 
 the Code was drafted and the Legisla^ ture adopted it in 1928.
 
 The Legislature could go no further than authorized by the Constitution ; that is, adopt a Code of Procedure, a law relating to criminal proceedings.” State
 
 *477
 
 v. Rodosta, 173 La. 635, 138 So. 124, 127. (Italics ours.)
 

 Our conclusion is that .it is immaterial that the House failed to adopt the Code draft, as such action upon the part of the Senate was not necessary. It is sufficient that Senate Bill No. 56, later Act No. 2 of 1928, was properly adopted by both the Senate and the House.
 

 Nor are we of the opinion that Act No. 2 of 1928 should have been promulgated.
 

 It is provided in section 1 (1-a) of Act No. 262 of 1926 that: “It shall be the duty of the Governor to appoint a Commission to prepare a draft of a Code of Criminal Procedure for this State. The draft of such code, when prepared, shall be promptly printed. The Governor shall submit to the Legislature of Louisiana, at its session in the year 1928, said draft, together with the report of the Commission, and with a message from himself in which he shall embody and condense each suggestion he shall deem of use.-
 
 And the Legislature of Louisiana shall have power to adopt said Code,
 
 with such amendments as they may deem advisable,
 
 by vote in each ■ house,
 
 without complying with the formalities of reading and the other formalities required by the Constitution in the passage of statutes.
 
 No promulgation of said Code shall be required beyond its publication in book form after same shall have become a law.
 
 (Italics ours.)
 

 “2-b. All amendments proposed in the Legislature shall be proposed within the first twenty (20) days after its convening, and no amendments shall be proposed after the lapse of that time. All amendments shall be referred to a joint committee of both houses, consisting of two members from each house, with the Attorney General as ex-officio chairman. Only such amendments shall be voted on as shall be favorably reported by this cqmmittee and each amendment shall be voted on separately.”
 

 Act No. 262 of 1926 proposing an amendment to the Constitution of 1921, relative to the adoption of a Code of Criminal Procedure, is special legislation, providing particular and exceptional methods of legislative procedure. All of the legal requirements as to the adoption of the Code must therefore Be found within, and confined to the limits of, the proposed amendment.
 

 The Legislature is specifically given power “to adopt said Code.” The method of adoption has been left entirely to the discretion of the lawmaking body. It has chosen to adopt the Code by an act declaring its adoption instead of adopting a draft of the Code. No promulgation of this act is required by the proposed amendment. No promulgation of the Code' is directed, but
 
 “by publication in book form after the same shall have become a law.”
 

 The Code itself is the law
 
 that was to be enacted, and the act adopting it was but the mere vehicle of the Code’s presentation to the Legislature for enactment. The promulgation of this act was therefore unnecessary. It did not contain a single provision of the Code of Criminal Procedure, and its publication in the official journal would not have given to the public any knowledge whatever as to the contents of the Code. Thát knowledge was to be imparted only
 
 “by publication in book form”
 
 of the Code of Criminal Procedure, as directed by the amendment.
 

 
 *479
 
 We conclude, therefore, that the Code of Criminal Procedure was legally adopted by the Legislature, and that defendant has not been deprived of any right guaranteed to him either by the federal or the state Constitution.
 

 (3) Bill of Exception No. 4.
 

 This bill was reserved to the ruling of the trial judge, overruling the objection of counsel for the defendant to the following question propounded to the first prospective juror, Mr. F. Bessler:
 

 “If you are selected as a juror to. try this case, and the State proves to your satisfaction and beyond a reasonable doubt that the .defendant at the bar, John Oapaci, conspired with the other party who has been indicted, George Daleo, to rob Charles Rabito of the money that he had, and that, while the conspiracy was still in existence and before it was ended, Charles Rabito was murdered, irrespective of who fired the fatal shot, will you find this accused Capaci guilty of the crime of murder as charged?”
 

 Counsel for defendant contends .that the question is improper, for the reason that the juror could bring in one of three verdicts; namely, guilty as charged, guilty without capital punishment, guilty of manslaughter.
 

 In overruling the objection, the trial judge stated that he would charge the jury as to what verdicts it could bring in, and it was agreed that the same objection would apply to each prospective juror examined, and that the same ruling of the court would apply to each juror examined and sworn in the case, without the necessity of repetition.
 

 The question propounded by the district attorney to the juror amounts to nothing more, in our opinion, than if the juror had been asked: “If the State proves its ease beyond a reasonable doubt, would you bring in a verdict of guilty as charged?”
 

 We can see no more objection to this question than to the question asked by the defense: “If the State should fail to prove its case to the satisfaction of the juror, and beyond a reasonable doubt, would he bring in a verdict of not guilty?”
 

 Both sides thoroughly examined the jurors on their voir dire and from every conceivable angle. Out of 54 men examined, 33 were challenged for cause due to the fact that they either had fixed opinions or were opposed to capital punishment.
 

 The jury was selected from the remaining 21 men. Defendant challenged 8 of these peremptorily and the state one. The defendant still had 4 of his peremptory challenges unused, when the panel of 12 men selected to try the case was completed.
 

 No bill of exception has been reserved to the ruling of the court as to the selection of any juror; the only objection being made was to the form of question propounded by the district attorney to some of the jurors. The trial judge reached the conclusion that there was no prejudice to defendant shown, and in this conclusion we concur.
 

 (4) Bill of Exception No. 5.
 

 This bill was reserved to the overruling by the court of the objection of the defendant to the district attorney making an opening statement in which he outlined, among the many things the state intended to
 
 *481
 
 prove, a confession made by defendant, Ca-pad.
 

 Tbe district attorney, in making his opening statement, relied upon article 333 of tbe Code of Criminal Procedure, wbicb declares that: “Tbe jury having been impaneled and tbe indictment read, tbe trial shall proceed in tbe following order:
 

 “The reading of tbe plea to tbe jury; tbe opening statement of tbe District Attorney explaining tbe nature of tbe charge and tbe evidence by wbicb be expects to establish tbe same; tbe opening statement by counsel for tbe defendant at bis option explaining tbe defense and tbe evidence by wbicb be expects to prove tbe same. * * * ”
 

 Tbe attack by defendant upon tbe constitutionality of this article on tbe ground that it is unconstitutional per se, as it changes substantive law, is without merit, since tbe provisions of the article relate clearly to matters of procedure in tbe trial of criminal cases.
 

 Tbe further attack by defendant upon tbe constitutionality of the article on the ground that tbe Code of Criminal Procedure is unconstitutional as a whole, because it bad not been adopted in tbe manner and form required by tbe Constitution of the state, is equally without merit, and has been already discussed in this opinion under bills of exceptions Nos. 2 and 3.
 

 Counsel for defendant also contend that article 333 gives tbe district attorney tbe right to go into and discuss tbe contents of a confession alleged to have been made by tbe accused, without laying the proper and necessary foundation for its introduction as being free and voluntary, and they cite certain English cases bolding that, in matters of felony, tbe prosecution in its opening statement should not declare that it intends to prove that defendant confessed.
 

 Tbe English cases cited have nothing to do with tbe case. Tbe right of tbe district attorney to make an opening statement in this state in a criminal case is purely statutory, and applies in all criminal prosecutions in wbicb a jury may be impaneled. Const. 1921, art. 1, § 9.
 

 Article 333 of tbe Code of Criminal Procedure declares that:
 
 “The jury
 
 having been impaneled and
 
 the indictment
 
 read, tbe trial shall proceed in tbe following order:
 

 “Tbe reading of tbe plea to
 
 the jury,”
 
 etc.
 

 Felonies are not excepted from tbe operation of article 333 of tbe Code of Criminal Procedure of this state. ■
 

 The argument of counsel for defendant that tbe district attorney may discuss tbe contents of a confession in his opening argument to tbe jury, without having laid tbe proper foundation for its admissibility, is purely academic and theoretical.
 

 This is not a case in wbicb an inadmissible confession was discussed before tbe jury by tbe district attorney in bis opening statement. As a matter of fact, when tbe confessions of defendant were tendered on tbe trial of tbe case, counsel for defense made no objection at all to their reception on tbe ground that they were not free and voluntary. See State’s brief, p. 57.
 

 In State v. Ducre, 173 La. 445, 137 So. 745, 747, on rehearing, it is said in part: “In
 
 *483
 
 making this opening statement, the district attorney is required to explain the nature of the charge and state the evidence by which he expects to establish the charge. * * *
 

 “Judging from its phraseology, the purpose of the article in question must be to make the district attorney show his hand as to the state’s evidence, as a matter of fairness to the accused, as well as to advise the jury concerning the questions of fact involved.”
 

 In State v. Silsby, 176 La. 744, 146 So. 684, 689, this court also said: “In our opinion the statute requires the district attorney to set forth not only
 
 the facts
 
 which he expects to prove, but also
 
 the evidence,
 
 i. e., the nature of the evidence, by which he expects to prove them, whether oral or written, or direct or circumstantial,
 
 or confessed.
 
 When the trial begins the time for skirmishing is over and the battle is on; and the statute contemplates that the state itself shall thenceforth battle in the open and not behind ramparts;
 
 that the district attorney shall then ‘show his hand as to the state’s evidence,
 
 as a matter of fairness to the accused.’ ” (Italics ours.)
 

 In the Ducre Case it is held that the language of article 333 of the Code of Criminal Procedure is mandatory, and that the framers of the Code clearly intended that the making of the opening statement by the district attorney should be deemed sacramental.
 

 The facts gleaned from a confession are as much facts in a criminal case as those derived from any other source. It is the duty of the district attorney to state such facts to the jury, and it is not to be presumed that a sworn officer of the law would attempt to use a confession extorted from a defendant in making his opening statement to a jury.
 

 Nor is it to be presumed that the district attorney, a sworn officer of the law, would make a statement of any fact to the jury in his opening statement that he might not see fit to offer after having gone into the trial of the case on its merits, and thereby prejudice the accused, as contended by counsel for defense in the motion to quash the indictment in this case.
 

 This contention of defendant’s counsel is, again, purely academic and theoretical, as it is not complained in this case that the state has failed to place before the jury any fact relied upon by the district attorney in his opening statement to the jury.
 

 (5) Bill of Exception No. 6.
 

 This bill was reserved to the ruling of the trial judge refusing to compel the district attorney to state whether he intended to prove that the defendant, íohn Capaci, fired the fatal shots that killed Charles Rabito, or whether he intended to prove that the shots had been fired by George Daleo, Oapaci’s co-defendant, who had been previously convicted of the murder of Charles Rabito.
 

 After the jury had been impaneled and sworn, and
 
 before
 
 the opening statement of the district attorney had been read to the jury, counsel for accused had the district attorney sworn as a witness.
 

 The district attorney stated to counsel for the accused that the opening statement would contain everything that the state proposed to prove, and that the state was not obligated
 
 *485
 
 to answer that question by an opinion or a conclusion; that the theory of the state was that the crime charged involved a conspiracy and the state was not called upon to state who> fired the shots, or to prove who fired the shots.
 

 After certain questions were propounded to the district attorney in reference to what happened in the case of State v. George Daleo, and as to what was said by counsel for the' state and special counsel assisting the prosecution in their argument before the jury in the Daleo Case, the trial judge considered that the matter was irrelevant, and refused to permit the examination to continue, and bill was reserved by counsel for defendant.
 

 At the very outset, we desire to state that this was a most extraordinary proceeding upon the part of the defendant. We know of no provision in the Oode of Criminal Procedure of this state that warrants the defendant in placing the district attorney upon the witness stand,
 
 in advance
 
 of his making his opening statement to the jury, to compel him either to make or not to make any particular statement of fact in his opening statement to the jury. And, in this partieu~lar case, even if such a proceeding had been warranted by the Code of Criminal Procedure, it was not possible for the district attorney to state which of the defendants fired the fatal shots, for he did not know. In the confessions made by the two defendants, each had charged the other with committing the homicide, and the only witness to the killing, a young boy by the name of William J. Andrews, was not able to identify the defendant guilty of the actual slaying.
 

 In his opening statement to the jury in reference to the actual killing, the district attorney made the following statement: “The State proposes to prove by the oral testimony of witnesses that a short time after 1:00 p. m. on Thursday, January 5, 1933, an automobile drove up near Bridgedage and that two men got out and that one stayed in the automobile with the motor running; that two shots were heard, and then a man with a sweater was seen running from the weeds and got into the automobile and drove off, and, as the car was speeding away, the State expects to prove that the license number of the car was taken by this witness (the young boy) and was the license number on the car of Charles Habito, the deceased; that the witness (the young boy) went back to the spot where the sound of the shots came from and saw the body of a njan on the ground, and that the man who ran back to the automobile wore a sweater and a slate-colored pair of pants; that this man with the sweater on was the man who left the car with Charles Habito and went back into the weeds, and that the other man who did not get out of the car, but was the companion of the man with the sweater on, while the shooting was taking place, raced the automobile motor and blew the horn, and afterwards drove the car back into town.”
 

 We find no error in the ruling of the trial judge as to this bill.
 

 (6) Bill ‘of Exception No. 7.
 

 This bill was reserved to the giving of certain special charges to the jury requested by the state.
 

 
 *487
 
 These charges, as recited 'by defendant in the bill, are not in the same order as that shown by the special charges as they appear at page 83 of the transcript, and which is as follows:
 

 “No. 4. The immediate injury from which death ensues, is considered as proceeding from all who are present and abetting the injury done and the actual perpetrator is considered as the agent of his associates. His act is their act, as well as his own; and all are equally criminal.
 

 “No. 5. It is not essential to the conviction of one of the participants that the state either allege or prove that he used fhe weapon with which the killing was done.
 

 “No. 6. I charge you that the law will excuse a person when acting under coercion or compulsion for committing most, if not all, crimes, except taking the life of an innocent person., Even the crime of treason, if committed under the fear of death, may, it seems, be excused.
 

 “No. 7. However, at common law, no man can excuse himself under the plea of necessity or compulsion for taking the life of an innocent person. The fear which the law recognizes as an excuse for the perpetration of an offense other than murder must proceed from an immediate and actual danger, threatening the very life of the perpetrator.
 

 “I charge you, gentlemen of the jury, that the doctrine of coercion does not apply to murder because- coercion has no application to capital offenses.
 

 “State v. Barnes, 48 La. Ann. p. 465, 19 So. 251.
 

 “I charge you that under the law of Louisiana there are no degrees of murder, as there are in some other jurisdictions. I further charge you that under the law of Louisiana there are no degrees of principals in a murder case, but that the Louisiana law is that all persons present, aiding and abetting in the commission of a felony are principals alike and without distinction of degree.” Tr. p. S3.
 

 Defendant objected to these special charges on the ground that they do not properly state the law, and were not applicable to the matters of fact in the instant case, and operated to the prejudice of the defendant, "because the purported confession made to the District Attorney -and offered in evidence by the State, tended to show that the defendant Capaei was coerced by the fear of immediate death into entering into the conspiracy to rob the said Charles Rabito, in which scheme he, Capaei,- was to act as a mere shield, and that he took no part in killing said Rabito and had no gun or other weapon and was not in the immediate vicinity of the killing but was more than 175 feet away when the said killing of Rabito was done by George Daleo.”
 

 In answer to above objections of counsel for defendant to the special charges requested by the state, the trial judge makes the following statements in his per curiam to this bill:
 

 “This bill was reserved to the charge of the Court.
 

 “The question of the coercion of the defendant was brought into the case by counsel for the accused in their examination of pro
 
 *489
 
 speetive jurors on their voir dire, in the statement, admission or confession of the accused made to Captain Grosch and signed by him and in the statement made by Capaei to the District Attorney in the jail.
 

 “It was also stressed by defendant’s counsel in their argument to the jury.
 

 “As a result the State requested the Court to give the special charge on coercion which was clearly pertinent to the case. * * •
 

 “Furthermore, the evidence completely refuted the statement of Capaei that he was coerced by fear of death into entering into a conspiracy to rob Charles Rabito or that he was to act as a mere shield and that he took no part in killing Rabito and was not in the immediate vicinity of the killing, but was more than 175 feet away when said killing of Rabito was done by George Daleo.
 

 “The evidence showed that at the home of Capaci’s mother nearly one-half of the money taken from Rabito was found, and $25.00 in one dollar bills was taken from Capaei’s wife, all of which Capaei admitted in his statement to Grosch at Police Headquarters was part of the money taken from Rabito after the murder and was recovered following Capaci’s arrest about thirty (30) hours after the murder, and long after either conspirator could have continued to exercise any compulsion of immediate or even constructive presence over the other.
 

 “There was no direct evidence introduced to show whether it was Capaei or Daleo who did the actual killing, and in fact no proof was submitted showing which of the conspirators actually killed Rabito. The evidence on this point was circumstantial and from this circumstantial evidence, I would be as much justified in assuming that Capaei killed Rabito as if I assumed that Daleo killed him. No eye witnesses saw who of the two — Capaei or Daleo — actually fired the fatal shots. Under the circumstances and under the evidence, I, therefore, considered the charge on coercion to be pertinent.”
 

 We concur with the trial judge that, under the circumstances of the case, as detailed in his per curiam to this bill, the charge as to coercion was pertinent.
 

 Special charges 4 and 5 are copied literally from R. C. L. vol. 13, p. 730: “The immediate injury from which death ensues, is considered as proceeding from all who are present and abetting the injury done and the actual perpetrator is considered as the agent of his associates. His act is their act, as well as his own; and all are equally criminal.
 

 “It is not essential to the conviction of one of the participants that the state either allege or prove that he used the weapon with which the killing was done.”
 

 The defendants, Capaei and Daleo, were jointly indicted and charged with the murder of Rabito. Each is therefore charged as a principal.
 

 In State v. Rodosta, 173 La. 629, 138 So. 124, 125, it is said: “In the case of State v. Poynier, 36 La. Ann. 572, the court used almost the identical language as that found in Bishop. The court said:
 

 “ ‘Where there is a principal — and there can be no crime without one — no other person will be considered a principal with him unless in a position to render personal assistance of some kind. The test to determine
 
 *491
 
 whether he is principal rather than accessory is, whether he is so situated as to make his personal help available — not actual physical help necessarily, 'but help of any kind — not help rendered in or by actual presence, but constructive presence as well.’ ■
 

 “The organ of the court then proceeds to illustrate the manner in which one, though not the chief actor, may become a principal. He says:
 

 “ ‘Thus, if he watched near or at a distance to prevent his companions being surprised, or stationed himself to give the alarm to favor their escape, or was in such situation as to come to their assistance so that the knowledge of this watching or position or situation inspired or was calculated to inspire his companions with additional confidence, and enable them quicker or safer or more effectually to commit their crime, then he is a principal.’ 1 Bishop’s Criminal Law, § 673. 1 Wharton’s American Criminal Law, § 116.”
 

 It is admitted that both of the defendants were present at the scene of the homicide. There was no direct evidence as to whether Capaci or Daleo did the actual killing. From the circumstantial evidence in the case, the trial judge declares that he would be as much justified in assuming that Capaci killed Rabito as he would be in assuming that Daleo killed him.
 

 Be that as it may, one of the defendants was the actual slayer. If the other remained in the automobile, with engine running, and horn blowing to drown the sound of the fatal pistol shots, and if he was in a position to come to the assistance of the actual slayer, to prevent him from being surprised, or to give alarm to favor his escape, and had the auto at hand, as a means of ready escape — • he was present aiding and abetting in the commission of the homicide, and as much a principal, in legal contemplation, as the chief actor in the homicide.
 

 We find no error in the special charges Nos.
 
 4
 
 and 5, given by the court at the request of the state.
 

 In special charges Nos. 6 and 7, the trial judge instructed the jury that the doctrine of coercion has no application to capital cases; and that there were no degrees of murder, nor degrees of principals in a murder case in this state, but that, under our law, all persons present, aiding, and abetting in the commission of a felony are principals alike.
 

 In State v. Hogan, 117 La. 863, 42 So. 352, 355, the court said: “Our statutes do not divide murder into two or more degrees, and do not provide that the specific intent to kill or actual premeditation shall constitute murder in the first degree.”
 

 In State v. Kraemer, 49 La. Ann. 766, 22 So. 254, 257, 62 Am. St. Rep. 664, it is said: “We have no different degrees of murder in this state, but parties accused get all the benefit which would arise from grading the crime in the flexibility given to the punishment which is to be meted out in any given case, by allowing the jury, under a charge of murder, to bring in a verdict of guilty without capital punishment.” See, also, to the same effect; State v. Heidelberg, 120 La. 300, 45 So. 256; State v. Dennison, 44 La. Ann. 135, 10 So. 599; State v. Ashley, 45 La. Ann. 1036, 13 So. 738; State v. Robinson, 143 La. 543, 78 So. 933.
 

 
 *493
 
 As there are no degrees of murder in this state, there are no degrees of principals. All persons present, aiding and abetting in the commission of a felony, aré principals, and are all punishable alike.
 

 The court also charged the jury that the doctrine of coercion did not apply in capital eases. Defendant, Capaci, is not indicted with his codefendant, Daleo, for conspiracy to rob, but he is jointly charged with him for the crime of murder, which the state claims was committed in the perpetration of a robbery.
 

 In State v. Barnes, 48 La. Ann. 465, 19 So. 251, 253, on rehearing, the court said: “In regard to marital coercion, the presumption of innocence does not necessarily arise in all cases.
 

 “Mr. Wharton, in his treatise on Homicide (paragraph 331), says: Tf a husband and wife jointly commit a murder, they hare been held to be coprincipals, as the doctrine of presumed coercion does not apply to murder.’
 

 “Such is also the conclusion of Archibold (volume 1, p. 45): ‘A wife who commits treason, murder, or robbery in company of her husband is not to 'be excused.’
 

 “Russell on Crimes states the principle:
 

 Tf she be guilty of treason, murder, or robbery, in company with or by coercion of her husband, she is punishable as much as if she were sole.’ Volume 1, p. 17.
 

 “Coercion, says Desty,' has no application to capital offenses. Paragraph 16.”
 

 If the plea of coercion is not available to even a wife in a case of murder, if the doctrine of presumed coercion does not apply to her in such a case, but she is punishable as much as if she were sole, or unmarried, it is difficult to understand how the doctrine of coercion in this case can be used as a shield by defendant against prosecution for the crime of murder.
 

 In R. C. L. vol. 8, par. 100, it is said: “It seems that the law will excuse a person when acting under coercion or compulsion, for committing most, if not all, crimes,
 
 except talcing the life of an innocent person.
 
 * * * But the authorities seem to be conclusive, at the common law, that no man can excuse himself, under the plea of necessity or compulsion,
 
 for talcing the life of an innocent person.
 
 The fear which the law recognizes as an excuse for the perpetration of an offense must proceed from an immediate and actual danger threatening the very life of the perpetrator.” (Italics ours.)
 

 The charge of the trial judge as to coercion is fully supported by the authorities quoted above, and properly states the law.
 

 (7) Bill of Exception No. 8.
 

 This bill was reserved to the action of the trial judge in overruling a motion for a new trial.
 

 The per curiam of the trial judge, attached to this bill, is as follows:
 

 “This bill was reserved to the ruling of the court refusing a new trial.
 

 “In the first place the-verdict of the jury was clearly in accordance with the law and the evidence.
 
 In fact, the case outlined to the jury in the opening statement of the District Attorney was proven beyond any reasonable
 
 
 *495
 

 doubt by conclusive overwhelming evidence.
 
 (Italics ours.)
 

 “Insofar as the accused being deprived of the service of one E. F. Martin, because the juror appearing in court was nGt E. N. Mar: tin but E. F. Martin, the court exercised the discretion vested in it as a matter of safety, because it was entirely possible that there was an E. N. Martin living in the Parish, but the wrong Martin was summoned.
 

 “Furthermore, the jury of twelve, which tried the accused, was obtained after examining fifty-four (54) men, and of those examined, the accused challenged peremptorily eight (8) jurors, leaving four (4) challenges which the accused never exhausted. Clearly there was no fraud or prejudice shown.
 

 “The remaining contentions of the motion for a new trial are covered by per curiaros to other bills of exception.”
 

 In the original motion for new trial, defendant complains that the verdict is contrary to the law and the evidence, a matter over which we have no jurisdiction, that defendant was deprived of the service of one E. F. Martin, as a juror, and that he was excused by the court on a challenge for cause contrary to the law of this state. The right of defendant is not to select, but to reject, jurors. He is not entitled by law to the service of any particular juror, and, in our opinion, the court exercised its sound discretion in excusing the juror, as the court was not satisfied that he was the person summoned to serve on the jury.
 

 Defendant also complains that he was tried under a Code of Criminal Procedure unlawfully enacted by the Legislature, rather than under the laws that now exist handling the prosecution of cases. We have already disposed of this contention, under bills Nos. 2 and 3, in the opinion in this case.
 

 The complaint that defendant was prejudiced because the court reiterated in the charge the phases of the law dealing with conspiracy is, in our opinion, frivolous. It was the duty of the court to charge the jury fully as to the law of conspiracy in this case, as the defendant is jointly charged with his co-defendant for murder, and the indictment necessarily involves conspiracy. State v. Ford, 37 La. Ann. 459; State v. Gebbia, 121 La. 1084, 47 So. 32.
 

 The statement of defendant in his original motion for a new trial, that the special charge given by the court on coercion had no application to the case, has already been discussed under bill of exception No. 7.
 

 In a supplemental motion for a new trial, defendant has reiterated the same objections already covered by the bills of exceptions discussed and disposed of by the court in this opinion.
 

 Defendant also contends, that he should have a new trial because of the prejudice existing against him in the community. We fail to find the affidavit of a single witness annexed to the motion for a new trial to prove such prejudice, and, as far as defendant’s complaint as to the prejudice disclosed by the answers of jurors is concerned, he admits in the motion that he was aware of the alleged prejudice prior to the time of swearing the jury, but did not apply for a change of venue, “as
 
 *497
 
 it was nevertheless impossible for him to properly prove the said prejudice.”
 

 The trial judge distinctly states in his per curiam to this bill: “Furthermore, the jury of twelve, which tried the accused, was obtained after examining fifty-four (54) men, and of those examined, the accused challenged peremptorily eight (8) jurors, leaving four (4> challenges which the accused never exhausted. Clearly there was no fraud or prejudice shown.”
 

 We do not see any good reason for granting a new trial because Mrs. Daleo’s testimony was contradicted by Mrs. Capara. The testimony of both went to the jury and was considered along with other evidence. A new trial will not be granted to enable defendant to impeach the testimony admitted on the trial.
 

 Defendant complains that his counsel were not served with the special charges requested by the state prior to argument to the jury. We know of no provision of the Code of Criminal Procedure making such requirement. Article 390 of the Code gives both sides the right to present to the court, before argument has begun, any written charge or charges.
 

 “When a written charge is requested, the Judge is not required to submit it to defendant’s counsel for scrutiny, and, if no objection is made to it when delivered, it is to be regarded as complete and satisfactory as to the statement of law governing the case.” Marr’s Crim. Juris. vol. 2, § 681, p. 1051; State v. Saunders, 44 La. Ann. 973, 11 So. 583.
 

 In our opinion, the motion for new trial was properly overruled.
 

 (8) Bill of Exception No. 9.
 

 As stated in the per curiam of the trial judge: “This bill was reserved to the charge of the Court on the question of conspiracy.
 

 “The definition of conspiracy as contained in the charge set out in this bill will be found in Pettibone v. United States, 148 U. S. 197, 13 S. Ct. 542, 37 L. Ed. 419; see, also, State v. Slutz, 106 La. 182, 30 So. 298.
 

 “The remainder of the charge relative to conspiracy contained in this bill was taken from the case of State v. Taylor, 173 La. 1010, and will be found at pages 1038, 1039, 1040, 1041, and 1042, 139 So. 463, 474.”
 

 In the Taylor Case, the trial judge charged .the jury, in part, as follows: “I charge you that if the evidence should satisfy you beyond a reasonable doubt, that a conspiracy existed between the defendants, or any two or more of them, not only to rob the officers and employees of the Roeheblave Market Branch of the Canal Bank and Trust Company, but that the conspiracy, if any such existed,
 
 also included and extended to a division of the funds,
 
 obtained from the said bank in the said robbery, that any act or declaration of any one of the conspirators performed or done
 
 after the said bank had been robbed, but before a disposition or division of the proceeds of said robbery had taken place between the said conspirators,
 
 is binding on all of the said conspirators and the act of one is the act of all; therefore, I charge you, that if the evidence should satisfy you beyond a reasonable doubt, that a conspiracy existed between the defendants or any two or more of them, not only to rob the officers and employees of the Roeheblave Market Branch of the Canal Bank
 
 *499
 
 and Trust Company, but that tbe conspiracy, if any existed,
 
 also included and extended to a division of the funds obtained from the said bank in the sañd robbery
 
 and that one of the conspirators killed the deceased Raymond Rizzo
 
 while attempting to escape and to prevent apprehension
 
 after haying robbed said bank and
 
 before a disposition or division of the funds
 
 obtained from said bank in said robbery had been made between him and his fellow conspirators, all who have joined in said conspiracy are guilty in the eyes of the law for the acts of either fellow conspirator, and you should so find them,
 

 “If, however, the evidence should satisfy you beyond a reasonable doubt, that a conspiracy existed between the defendants, or any two of them, not only to rob the officers and employees of the Rocheblave Market Branch of the Canal Bank and Trust Company', and that the conspiracy, if any existed, also included and extended
 
 to a division of the funds
 
 obtained from the said bank in the said robbery, and that one of the conspirators killed the deceased Raymond Rizzo
 
 while attempting to escape and to prevent appreheivsion
 
 after having robbed the said bank, but that the said killing was done
 
 after a division or disposition of the funds
 
 from the said bank had been had between the conspirator(s) doing the
 
 killing
 
 and his co-conspirators, then I charge you the division of said proceeds of said robbery of said bank as part of said conspiracy, if any existed, made the conspiracy complete, and the killing is chargeable to the one firing the fatal shot, and not to his fellow conspirators, and they should be found not guilty.” (Italics ours.) State v. Taylor, 173 La. 1041, 1042, 1043, 139 So. 463, 474.
 

 The trial judge gave the above charge to the jury in this case literally, except that the name of the deceased was substituted for “the officers and employees of the Rocheblave Market Branch of the Canal Bank and Trust Company,” as the party robbed.
 

 In approving the above charge in the Taylor Case, this court said: “We think that the law of conspiracy and
 
 the
 
 responsibility of conspirators,
 
 as applied to the facts of this pase,
 
 was fully and correctly given by the trial judge in his general charge as hereinabove set forth.
 

 “The undertaking of the defendants was to
 
 rob the bank and to divide the proceeds of the robbery.
 
 This adventure continued to be a joint one until the division of the iwoc-eeds took place. See State v. Bolden, 109 La. 484, 33 So. 571; Osborne v. State, 99 Miss. 410, 55 So. 52; Baldwin v. State, 46 Fla. 115, 35 So. 220. (Italics ours.)
 

 “In the case of Holmes v. State, 6 Okl. Cr. 541, 119 P. 430, 437, 120 P. 300, the court held:
 

 “ ‘Where a conspiracy embraces not merely a series of unlawful acts, but also extends to a division of the fruits and proceeds of such acts among the co-conspirators, anything said or done by them, although after the commission of the unlawful acts, but before a disposition or division of- the proceeds of such acts, is admissible evidence against all the other conspirators. See State v. Pratt, 121 Mo. 566, 26 S. W. 556; Scott v. State, 30 Ala. 503; People v. Pitcher, 15 Mich. 397; State v. Grady, 34 Conn. 118. The theory upon which such evidence is admissible is that the conspiracy does hot terminate
 
 *501
 
 until there has been a division of its fruits or spoils. See People v. Opie, 123 Cal. 294, 55 P. 989. Conspirators are also responsible for the acts of their co-conspirators done for the purpose of escaping detection and arrest. See State v. Thaden, 43 Minn. 253, 45 N. W. 447.’ ”
 

 In the Taylor Case, this court not only approved the part of the charge above quoted, but the entire charge as to conspiracy, as it appears at pages 1038, 1039, 1040, 1041, 1042, and 1043 of the opinion in 173 La., 139 So. 463, 473-475, in that ease.
 

 As the trial judge gave this charge in its entirety to the jury in this case, the charge as to the general law of conspiracy as therein contained is approved as a correct statement of the law.
 

 It is true that the parts of the charge quoted in this opinion are not applicable to the facts of this case, since Rabito was murdered before the robbery, and not while the conspirators were attempting to escape and to prevent apprehension at his hands. However, as the general law of conspiracy applicable to the facts of the case was correctly given to the jury, we fail to see wherein defendant has been prejudiced, since the jury could not have possibly convicted defendant on the ground that he slew Rabito, after the robbery and before the division of the spoils, in order to prevent apprehension and secure his escape.
 

 The issue, therefore, as to the conspiracy continuing until the division of the spoils, is eliminated from the case, as it has no bearing whatever as to the guilt of the defendant.
 

 In the bill reserved by defendant to the charge of the court on the subject of conspiracy, defendant complains that the law on the subject is not properly stated and was not applicable to the facts of the case, and “was particularly devastating and to the prejudice of the defendant in consideration of the special charges given by the court requested by the state.” These special charges relate to the degrees of murder and the degrees of principals in this state, declare that all persons present, aiding and abetting in the commission of a felony, are principals alike, and that the doctrine of coercion is not applicable to capital cases.
 

 After reciting the special charges given by the court at the request of the state, defendant declares in the bill reserved “that this meaningless, contradictory and confusing statement to the jury deprived him of due process of law,” as there “was evidence tending to show that the defendant did not participate freely and voluntarily in the
 
 robbery
 
 of Charles Rabito, but that he was by force of arms and under the fear of immediate death coerced into the doing of such acts as he performed in the alleged conspiracy to rob Charles Rabito,” etc. Defendant annexes to this bill “the alleged confession” of John Capaci to the district attorney and the testimony of Mrs. A. Capaci.
 

 In answering the attack made by defendant on the charges given by the court to the jury, the following statement is made in the per curiam to this bill:
 

 “This 'bill was reserved to the charge of the Court on the question of conspiracy.
 

 “The definition of a conspiracy as con
 
 *503
 
 tained in the charge set out in this bill is to be found in:
 

 “Pettibone v. United States, 148 U. S. 197, 13 S. Ct. 542, 37 L. Ed. 419; see, also, State v. Slutz, 106 La. 182, 30 So. 298.
 

 “The remainder of the charge relative to conspiracy contained in this bill was taken from the case of State v. Taylor, 173 La. 1010, and will be found at pages 1038, 1039, 1040, 1041 and 1042, 139 So. 463.
 

 “That part of the charge covering criminal intent is submitted as a correct proposition of law.
 

 “Insofar as the court giving to the jury the requested charges of the State which appear in this bill and concerning which defendant complains made the general charge relative to conspiracy particularly devastating and prejudicial to defendant, it will be seen that there is clearly no conflict between the genei'al and special charges, as it will be noted that the part of the general charge contained in this bill relates to conspiracy, criminal intent, and proof, whereas the special charges relate to degrees of murder, principals, and coercion, and there is nothing in these charges which can be construed as confusing, contradictory or meaningless, but the charges as given were and are the law, and were applicable to the facts and the evidence adduced on the trial of this case.
 

 “As far as Capaci being an unwilling conspirator and being coerced by Daleo into the conspiracy to rob and murder Rabito, this contention was completely shattered by the evidence of the State and particularly by Mrs., George Daleo, the wife of the other accused, George Daleo, who testified on the morning after the killing and whilst her husband was under arrest and in jail in New Orleans," that Capaci came to her home and brought her, her husband’s share of the money taken from Rabito. The other part of the money was found at Capaci’s mother’s home and another portion of it was taken from his wife at Police Headquarters.
 

 “Instead of Daleo thrusting the money on Capaci, the evidence tended to show a reverse situation, and Capaci, it appears, thrust Daleo’s share of the money on the latter’s wife.
 

 “The Court again re-iterates that there was no direct evidence offered to show that Daleo did the killing any more than Capaci. The evidence on this point was, entirely circumstantial and was to the effect that the two men got out of the car, one of whom was proven to be Rabito, the deceased, and the other dressed in a gray sweater and cap, and walked into a secluded spot where two shots were heard, and the man with the. gray sweater and cap was seen to run back alone and get in the car with the other man and drive off. Daleo later in the evening bought a hat on Rampart Street and left his cap to be given away. He also wore a gray sweater that buttoned like a coat in front, on one of the days of his (Daleo’s) trial, but whether it was Capaci or Daleo, the day of the murder who did the actual killing, no proof was adduced ánd both accused in their written and oral statements accuse each other of having fired the fatal shot”
 

 Under the circumstances of the case, we do not find any conflict between the charge on conspiracy and that on coercion. Neither is there any conflict between the charge on con-
 
 *505
 
 «piracy and that relative to the degrees of murder. The charge given to the jury that it was not essential to the conviction of one of the participants for the state to either allege or prove that he used the weapon with which the hilling was done is clear-cut and uncontradictory, and does not conflict with any other part of the general or any special charge given by the court.
 

 Both the general charge and the special charges are responsive to the evidence adduced on the trial, with the exception of that part of the charge as to conspiracy continuing down to the division of the spoils.
 

 The general and the special charges had the approval of the courts of this state and. the several states of this Union, and are correct statements of the law applicable to the case.
 

 (9) Assignment of Errors.
 

 The assignment of errors filed in this court is merely a repetition of the objections raised in the bills of exceptions.
 

 (10) Motion in Arrest (Bill of Exception No. 14).
 

 The motion in arrest filed in this case is predicated on the propositions that the trial judge did not charge the jury on the law applicable to the case; that his instructions on the law of conspiracy are confusing, meaningless, and contradictory;
 
 that the evidence
 
 showed that defendant did not participate freely and voluntarily in the robbery of Habito ; that the charge as to coercion nullified defendant’s legal defense of coercion, and was particularly prejudicial to him in view of the refusal of the district attorney to state who he would prove fired the fatal shot; that the court erred in permitting the district attorney to proceed with the trial under the indictment that was not in conformity with the rules prescribed by the jurisprudence of this state, prior to the adoption of the Code of Criminal Procedure, which defendant alleges in his motion is unconstitutional, null, and void.
 

 All of . the objections set forth in the motion in arrest have been passed upon under the various bills of exceptions already reviewed in this opinion.
 

 But this court must enter its protest against the attempt of the defendant in this case to urge objections to the charge of the lower court by means of a motion in arrest of judgment.
 

 Article 391 of the Code of Criminal Procedure provides that: “Every objection to the charge given or to a refusal to charge as requested, or to a refusal to give the charge in writing,
 
 shall be by means of a bill of exceptions reserved before the jury shall have retired to deliberate upon their verdict,
 
 and shall be accompanied by such a statement of facts as shall show the error in the charge given, or in the refusal to charge as requested, or that the request to give the charge in writing was refused.” (Italics ours.)
 

 Nor can this court review
 
 evidence
 
 under a motion in arrest, which “lies only for a substantial defect, patent upon the face of the record.” Code Cr. Proc. art. 517.
 

 This court has repeatedly held, both before and since the adoption of the Code, that: “The province of the motion in arrest of judgment is to assign some error pa
 
 *507
 
 tent on the face of the record, or some radical defect therein, the rule being that a defect that can be established only by the taking of evidence must be urged in a motion for a new trial and not in arrest.” Marr’s Grim. Juris, vol. 2, p. 1145.
 

 (11) Bill of Exception No. 10.
 

 This bill was reserved to the refusal of the court to charge the jury at the request of defendant as follows:
 

 “Both the State and the defense are bound
 
 by their witnesses.
 
 When either the State or the defense places
 
 a witness
 
 upon the witness stand, the side that places him on the witness stand
 
 vouches for Ms credibility
 
 and they are bound by his answer unless they plead surprise and seek, to impeach their testimony in a legal manner.
 
 Therefore,
 
 if you find
 
 that a confession
 
 was introduced by the State, then I charge you that you are' to consider that confession or statement
 
 in its entirety.”
 
 (Italics ours.)
 

 In the per curiam to this bill, the trial judge states: “The only purpose of this charge requested was to confuse the jury. Of course, the jury had to consider the confession, statement or admission in its entirety. The State could not introduce only a part of Oapaci’s confession or admission, but it introduced in evidence the whole confession.
 

 “The special charge attempts to make the State vouch for the credibility of Oapaci, and, the charge contains the contention that once the State introduces the confession or admission of the accused in evidence, it vouches for the truthfulness of Oapaci and is bound by what is contained in Oapaci’s confession or statement, and, therefore, cannot impeach this statement unless the State pleads surprise, and impeaches the confession in a legal manner.
 

 “The law, however, permits the State to introduce in evidence the confession of an accused and thereafter contradict it.
 

 “See: State v. Wedemeyer, 11 La. Ann. 49; 16 Corpus Juris 737, Par. 1516; Article 450, Criminal Code of La.; State v. Rini, 151 La. 163, 91 So. 664.”
 

 “It is for the jury to determine whether the whole statement or any part thereof is entitled to credit, and to how much credit; and the State may contradict any part of the prisoner’s statement given in evidence, and then the whole testimony is left to the jury for their consideration, precisely as in other cases, when one part of the testimony is contradictory to another.” Marr’s Crim. Juris, vol. 1, p. 838.
 

 We find no error in the ruling of the trial judge.
 

 (12) Bill of Exception No. 11.
 

 This bill was reserved to the refusal of the trial judge to give the following special charge requested by defendant: “I charge you, gentlemen of the jury, that under the law of Louisiana, the Legislature has seen fit to give to the jury the right of bringing in four verdicts when a man is charged with murder, you can, if you believe the evidence justifies, bring in a verdict of guilty as charged, or you can with just as much conscientious feeling for your State and to your God, bring in a verdict of guilty without capitel punishment, and the same is applicable to
 
 *509
 
 your right and privilege to bring in a verdict of guilty of manslaughter. You will also have the right to bring in a verdict of not guilty, if you do not believe that the State has proven that a conspiracy was wilfully, unlawfully entered into by the defendant, John Capaei, and, that the State has failed to prove that there was no abandonment on his part from the conspiracy.”
 

 Defendant alleges in this bill that the court refused to give this special charge to the jury “for the reason that the same was covered by the general charge of the court, whereas in point of fact the only part of the general charge, relating to the subject-matter embraced in the foregoing charge, is as follows: ‘So, gentlemen of the jury, if you believe from the evidence which you have heard in this ease that the State of Louisiana has proven the accused guilty to your satisfaction and beyond a reasonable doubt, it is your duty to say so by your verdict of guilty regardless of any and ail consequences. If, on the other hand, you believe that the State of Louisiana has failed to prove the guilt of the accused to your satisfaction and beyond a reasonable doubt, or you have a doubt as to his guilt, your verdict must be not guilty.’ ”
 

 The general charge, however, in the record shows that the court charged the jury both on the question of murder and manslaughter and also on the question of the various verdicts which they might render, as will more fully be seen by the following extracts from the general charge:
 

 “The prisoner at the bar is charged with the crime of Murder.
 

 “Murder, as defined by law, is where a person of sound mind or discretion unlawfully kills any reasonable creature in being in the peace of the State, with malice prepense or aforethought, either expressed or implied.
 

 “There is another kind of Homicide termed Manslaughter, which is defined as the unlawful killing of another without any malice, expressed or implied.
 

 “Express Malice is where one person kills another with a sedate, deliberate mind and formed design.
 

 “Malice is implied by law from any deliberate cruel act committed by one person against another, however sudden.
 

 “The difference between Murder and Manslaughter is that to constitute murder, the act must be done with malice, with premeditation, whereas in manslaughter the act is committed without malice — as when in a sudden quarrel two persons fight and one of them kills the other. • * *
 

 “The punishment for Murder is death, but the Jury may qualify its verdict by adding the words ‘without capital punishment,' which verdict would consign the accused to the State Penitentiary at hard labor for the term of his natural life.
 

 “Manslaughter is punishable by a fine not exceeding Two Thousand Dollars and imprisonment at hard labor in the State Penitentiary not exceeding twenty years.”
 

 As to the various verdicts that may be rendered, we quote from the general charge as follows:
 

 “In this case, Gentlemen, all twelve of you must agree and concur in order to bring in a verdict, and you may render either one of the following verdicts:
 

 
 *511
 
 “1st. Guilty, the punishment for which is death by hanging;
 

 “2nd. Guilty without Capital Punishment, the punishment for which is incarceration in the State Penitentiary for the term of his natux-al life;
 

 “3rd. Guilty of Manslaughter, the punishment for which is a fine not exceeding Two Thousand Dollars and imprisonment in the State Penitentiary not exceeding twenty years;
 

 “4th. Not Guilty, which verdict will acquit and free the accused.”
 

 It is therefore clear that the requested charge was fully covered by the general charge.
 

 (13) Bill of Exception No. 12.
 

 This bill was reserved to the ruling of the court refusing the following special charge on the question of conspiracy: “Conspiracy is further defined as follows: Where several persons combine to commit an offense
 
 and a homicide is committed 5y one of them in order to effect his escape,
 
 the other cannot be held responsible for the homicide unless they consented and were privy in fact thereto, or had the common purpose of resisting with extreme violence
 
 or to kill any person who interferes with or attempts to apprehend them.
 
 But if the conspirators contemplate and intend the doing of everything
 
 necessary to effect an escape,
 
 and this may be inferred from the fact they arm themselves, they will be responsible for a homicide committed by one either
 
 in effecting Ms oxon escape or in aiding the escape
 
 of any or all of his comrades. On the other hand, if the conspirators had only the common purpose of committing an offense and one of the conspirators commits a mui'der, merely as a result of the situation in which he finds himself, and proceeding from the impulse of the moment, without any previous concert, his co-conspirators would not be guilty of murder.
 

 “It is a question of fact for you to determine whether or not there was a conspiracy and a question of fact for you to determine whether or not there was an unlawful entry into a conspiracy, and whether or not there was an abandonment of the conspiracy, and if in your mind the State had failed to prove that a wilful, unlawful conspiracy existed, or that if it did exist, there was not an abandonment, or that the conspiracy did not extend to and include everything necessary to commit the conspiracy even to the extent of taking human life, then I charge you that you are to find the defendant not guilty.” (Italics ours.)
 

 We have already held in this opinion that the charge given by the court to the jury as to a homicide committed by one of the conspirators, in order to effect his escape, after the robbery but before the division of the spoils, was not applicable to the facts of this case, as the murder of Rabito was committed before the robbery, and not after the robbery,‘in order to effect an escape.
 

 For the same reason, the above special charge requested by defendant is not applicable to the facts of the case, and was properly refused by the trial 'judge.
 

 “The judge cannot he required to charge in respect to a matter of which there was no
 
 *513
 
 evidence whatever, or upon a point which does not arise in the case — that is to say, he cannot be required to charge an abstract proposition of law, whether such abstract proposition be correct or incorrect.” Marr’s Crim. Juris, vol. 2, p. 1034, § 674.
 

 (14) Bill of Exception No. 13.
 

 This bill was reserved to the refusal of the trial judge to give to the jury the following special charge:
 

 “I further charge you that,
 
 if any act or deed done hy the said John Capaci was done under duress or threats of violence
 
 by the said George Daleo, (that) the said acts or deeds done by John Capaci not being of his free will, he cannot be held responsible for said acts, and I further charge you that if from the evidence you have heard, (if) you believe the above facts to be true, you are to bring in a verdict of not guilty as against the accused, John Capaci.” (Italics ours.)
 

 Under this special charge, if the jury had been of the opinion that John Capaci was guilty of murder, and that the act or deed was done under duress or threats of violence by George Daleo, then it would have been their duty to acquit.
 

 We have already held that the charge given by the trial judge to the jury, “that the doctrine of coercion does not apply to murder, because coercion has no application to a capital offense,” is a correct statement of the law on the subject. See bill No. 7.
 

 As the special charge requested is broad enough to include within the doctrine of coercion the crime of murder, as well as any other offense, it is not a correct statement of the law on the subject, and was properly refused.
 

 The Code of Criminal Procedure has been in operation in this state for the last six years. Its constitutionality, as a whole, has never before been contested. In our opinion, the Code was legally adopted by the Legislature of the state, and the specific articles attacked by defendant are constitutional and valid.
 

 Defendant has been tried under the same form of indictment for murder, and according to the same procedure during the progress of the trial as other citizens of this state accused of similar crimes.
 

 We fail, therefore, to see wherein defendant has been denied the equal protection of the law, or has been deprived of due process of law, or that he has been convicted without being informed of. the nature, and cause of the accusation against him.
 

 The conviction and sentence appealed from are affirmed.
 

 ST. PAUL, J„ absent.